W.P. ASSOCIATES,

v.

FORCIER, INC.

No. 92–653–Appeal.

Supreme Court of Rhode Island.

Feb. 9, 1994.

William Landry, Karen Pelczarski, Blish & Cavanagh, Providence, for plaintiff.

Patricia Rocha, W. James McKay, Adler, Pollock & Sheehan, Providence, for defendant.

## OPINION

LEDERBERG, Justice.

A Superior Court declaratory judgment determined that the Release and Indemnification Agreement between Forcier, Inc. (Forcier), and W.P. Associates (Associates) unambiguously discharged the outstanding balance of a promissory note executed by Associates to Forcier. Forcier appealed. We affirm.

## I

### Facts

In April 1989, Associates exercised an option to purchase from Forcier two adjacent parcels of land in the town of Coventry. One parcel was known as the Washington Village Golf Course (golf course); the second parcel was slated for a residential condominium project (condominium parcel), at which site construction had already begun as of the date of the closing. The total purchase price of these parcels was $2,625,000: $1.5 million was paid in cash at the closing and $750,000 in the form of an unsecured promissory note, payable as condominium units were sold; and $375,000 for five off-site improvements, three of which were to benefit the golf course.[1] At the closing Forcier delivered to Associates a warranty deed to the condominium parcel. The warranty deed to the golf course was delivered to escrow agents pursuant to an agreement that required completion of the off-site improvements before release of the deed.[2]

Numerous disputes delayed completion of the project and led Associates to claim damages against Forcier. One problem arose after project plans were converted from the originally proposed six- and eight-unit condominium buildings to four- and six-unit buildings. Associates alleged that engineering errors and omissions in the plans prepared by Forcier necessitated the reconstruction of leaching fields that otherwise would have encroached on wetlands and precluded approval from the Department of Environmental Management (DEM). Associates argued that the new plans not only resulted in additional costs, but also caused delays in the completion of the septic systems. As a result, Associates was forced to pay hotel lodging expenses for purchasers of the condominium units while the work was being completed.

---

1. The five off-site improvements were the relocation and construction of five golf greens and three tees, the replacement of a clubhouse, the completion of a parking lot, the installation of a traffic light at the entrance to the golf course, and a donation of $13,100 to the town of Coventry for road improvements. If the cost of these improvements exceeded $375,000, Forcier agreed to pay Associates the difference. If the cost was less than $375,000, the parties agreed to split the savings.

2. Shortly after the commencement of this litigation, the deed to the golf course was deposited by the escrow agents in the Superior Court registry.

Associates also claimed damages resulting from actions taken by the Hopkins family, which continued to operate the golf course after the May 1989 closing pursuant to an agreement with Forcier. According to testimony at trial, the Hopkinses created potential vicarious liabilities by serving liquor at the golf course's clubhouse even though they did not have liquor-liability insurance, and it was alleged that the Hopkinses had failed to pay taxes on the property.

In addition, after becoming aware of a possible wetlands violation caused by the Hopkinses' removal of trees from wetland areas on the golf course, Associates hired a landscaping firm to restore those protected areas. According to Lawrence LeBlanc (LeBlanc), a general partner of Associates, these occurrences collectively had resulted in damages to Associates of "at least a half million dollars." LeBlanc further worried that the balance Associates owed Forcier on the promissory note—continuously decreasing as each condominium unit was sold—would fall below the level of Associates's rapidly increasing claim of damages against Forcier.

The release of the golf course deed from escrow was delayed in part by a dispute over the cost of off-site improvements. Title to the property therefore remained with Forcier, who became concerned about potential liabilities from the golf course and the Hopkins family.

Eventually Forcier and Associates began negotiations to settle the disputes that arose from their initially amicable business deal. After a March 1991 private meeting between Robert R. Forcier, president of Forcier, Inc., and LeBlanc, both parties came away believing that all their disputes would be resolved through a Release and Indemnification Agreement (agreement). Associates's attorney, Paul Plourde, relying on LeBlanc's recollection of the meeting, drafted the first version of the agreement. The parties thereafter exchanged a total of three or four drafts of the agreement before the final version was accepted and signed by the parties.

Instead of resolving all the disputed issues, the agreement created another: Was the promissory note, executed as part of the closing and carrying a balance of approximately $413,000, included in the agreement? Associates filed a complaint in Superior Court, seeking a declaratory judgment that the promissory note was discharged by the clear and unambiguous language of the agreement. The Superior Court, sitting without a jury, declared *inter alia* that the note had been discharged by the clear intent of the parties as evidenced in the plain language of paragraph 6 of the agreement. In response, Forcier filed the instant appeal.

## II

### *Discussion*

Paragraph 6 of the agreement reads:

"6. Forcier, Inc. and the Guarantors hereby agree to release, indemnify and hold harmless, Associates and its partners, and their respective heirs, executors, administrators, personal representative, successors and assigns, from any and all manner of action or actions, cause or causes of action, suits, debts, demands, sums of money (including reasonable attorneys' fees) and all other claims and demands whatsoever, in law or in equity, which Forcier, Inc. or the Guarantors have, for or by reason or means of any matter or thing from the beginning of the world to the day of the date of these presents, against Associates and its partners, or any of them, arising out of or relating to any and all actions taken or not taken by Associates in connection with the Condominium Parcel, Improvements, Golf Course Parcel or the operation * * * of the Golf Course Parcel and Clubhouse."

On appeal, Forcier maintained that the trial justice erroneously concluded that the agreement clearly and unambiguously discharged Associates's obligation under the note because the broad language at the beginning of paragraph 6 is self-limited by the specific terms that conclude the paragraph. Forcier contends, alternatively, that the omission of the promissory note from the specific, defined terms of the agreement gave rise to an ambiguity that should have been resolved by extrinsic evidence. This extrinsic evidence, according to Forcier, would have clearly demonstrated the parties' intent

not to include the note within the terms of the agreement.

Associates predictably supports the trial court's finding that the agreement clearly and unambiguously discharged the note. Associates argues, alternatively, that even if the agreement were ambiguous, the trial justice correctly found that the parties intended to discharge the note.

In reviewing the instant appeal, we are guided by well-settled rules on the interpretation of contracts. In particular, a court must find that a contract is ambiguous before it can exercise judicial construction of the document. If the court finds that the terms of an agreement are clear and unambiguous, the task of judicial construction is at an end and the agreement must be applied as written. *Aetna Casualty & Surety Co. v. Graziano*, 587 A.2d 916, 917 (R.I.1991). In determining whether an agreement is clear and unambiguous, the document must be viewed in its entirety and its language be given its plain, ordinary and usual meaning. *Antone v. Vickers*, 610 A.2d 120, 123 (R.I.1992). Applying this standard, we have consistently found that an agreement is ambiguous only when it is reasonably and clearly susceptible to more than one interpretation. *Gustafson v. Max Fish Plumbing & Heating Co.*, 622 A.2d 450, 452 (R.I.1993); *Nelson v. Ptaszek*, 505 A.2d 1141, 1143 (R.I.1986). If a document is susceptible to more than one interpretation, extrinsic evidence is admissible to aid in its interpretation. *Nelson*, 505 A.2d at 1143. Where no ambiguity is found, it is basic that the intention of the parties must govern *if* that intention can be clearly inferred from the writing and if it can be fairly carried out in a manner consistent with settled rules of law. *Westinghouse Broadcasting Co. v. Dial Media, Inc.*, 122 R.I. 571, 581, 410 A.2d 986, 991 (1980). In interpreting unambiguous contracts, we "consider the situation of the parties and the accompanying circumstances at the time the contract was entered into, not for the purpose of modifying or enlarging or curtailing its terms, but to aid in the interpretive process and to

assist in determining its meaning." *Hill v. M.S. Alper & Son, Inc.*, 106 R.I. 38, 47, 256 A.2d 10, 15 (1969).

Application of these principles to the case before us reveals that the agreement clearly and unambiguously releases Associates's obligations under the note. In reaching this conclusion, we first determine whether the agreement is reasonably susceptible to more than one interpretation. In paragraph 6 of the agreement, Forcier released Associates from, *inter alia*, "any and all * * * debts, demands, sums of money * * * and all other claims and demands whatsoever." The sentence explains that the release applies to debts "arising out of or relating to any and all actions taken or not taken by Associates in connection with the Condominium Parcel, Improvements, Golf Course Parcel or the operation * * * of the Golf Course Parcel and Clubhouse." The promissory note became such a monetary obligation of Associates when it signed and delivered the note. The explicit terms of the promissory note provided for incremental payments to Forcier as each condominium unit was sold. More importantly, besides a small claim arising from savings on the cost of off-site improvements,[3] the promissory note was the only outstanding "debt" or "sum of money" claimed by Forcier "in connection with the Condominium Parcel." Thus, there is only one reasonable interpretation of the agreement, namely, that Forcier was releasing Associates from its obligations under the promissory note. Hence, because there is only one reasonable interpretation, the agreement is unambiguous.

We find no merit to Forcier's contention that because the explicit term "promissory note" was not written into the agreement, an ambiguity was thereby created. Although ambiguity may be inferred from the omission of an explicit reference to a claim in a release, *Aetna Casualty & Surety Co. v. Farr*, 594 A.2d 379, 381 (R.I.1991), we are of the opinion that the instant case does not warrant such a conclusion. The release in *Farr* specifically delineated only those claims

---

**3.** Forcier alleged that there was a savings on the off-site improvements that required payment

from Associates in the amount of $13,000.

"which ha[d] been the subject matter * * * of certain proceedings under said Workers' Compensation Act." *Id.* Thus, the omission of any reference to an uninsured motorist claim created an ambiguity. *Id.* The agreement in the instant case, however, released *any and all* obligations concerning the events enumerated in paragraph 6, and as noted, the promissory note was such an obligation derived from those events. Thus, even though the specific words "promissory note" were not used, the note was clearly referenced and released by the agreement.

We disagree with Forcier's contention that the parties' conflicting interpretations demonstrate that an ambiguity must exist. *Flynn v. Flynn*, 615 A.2d 119 (R.I.1992), the case relied on by Forcier, hinged upon the interpretation of a word in the property-settlement agreement between the parties. In concluding that the agreement was ambiguous, the *Flynn* court stated, "We would be hard-pressed to find that an ambiguity did not exist * * * in light of these two disparate interpretations" of the word "inheritance," because both interpretations were reasonable. *Id.* In the instant case we are of the opinion that the only reasonable interpretation of the agreement is that it discharged the promissory note.

Forcier alternatively argued that even if the language were clear and unambiguous, the trial justice erred in ruling that the agreement discharged Associates's obligations under the note. According to Forcier, when the plain language of the entire agreement is taken into consideration, the broad language was self-limited by the more specific terms. Relying on the rule that specific words generally follow the intention of the parties with greater exactness than general words, *Marcaccio, Inc. v. Santurri,* 51 R.I. 440, 442, 155 A. 571, 572 (1931), Forcier argued that the agreement was limited to the enumerated items in paragraph 6, which did not include the note. We disagree with Forcier's interpretation of paragraph 6. As noted above, the enumerated items that Forcier viewed as self-limiting, in fact, included the promissory note, even though the note was not expressly listed. Such is our conclusion after giving the words in para-

graph 6 their plain and ordinary meanings: the agreement released "any and all * * * debts * * * arising out of * * * actions taken * * * in connection with the Condominium Parcel, Improvements, Golf Course Parcel or the operation * * * of the Golf Course." The promissory note was just such a debt, and thus was clearly discharged by the agreement.

Accordingly, for the reasons stated herein, Forcier's appeal is denied and dismissed. The judgment appealed from is affirmed. The papers in the case are remanded to the Superior Court.