[No. F034714. Fifth Dist. Dec. 21, 2001.]

FIREMAN'S FUND INSURANCE COMPANIES, Plaintiff and Appellant,
v.
ATLANTIC RICHFIELD COMPANY, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I of the Discussion.

## COUNSEL

McCormick, Barstow, Sheppard, Wayte & Carruth, James P. Wagoner, Lynne Thaxter Brown, Robert K. Landen, Todd W. Baxter and Staci D. Campbell for Plaintiff and Appellant.

Wild, Carter & Tipton and Russell G. VanRozeboom for Defendant and Respondent.

## OPINION

**VARTABEDIAN, Acting P. J.**—This case concerns the extent of insurance coverage provided under an "additional insured" endorsement to a commercial general liability policy. The trial court held the policy covers the additional insured for the factual circumstances presented here as constituting "liability arising out of" the work of the named insured. At issue are (1) whether the notice of appeal was timely filed and (2) whether Atlantic Richfield Company (ARCO) is covered by the additional insured endorsement obtained by the named insured of Fireman's Fund Insurance Companies (FFIC), Crider Construction, Inc. (Crider), for liability to a Crider employee who injured his back when a wooden stair on ARCO's premises gave way as he stepped on it while performing work for his employer. We affirm.

### PROCEDURAL HISTORY

FFIC appeals from a judgment entered in favor of respondent ARCO on October 22, 1999. The judgment was entered after the trial court granted ARCO's motion for summary judgment on FFIC's claims for reimbursement of the costs of settlement and defense it paid on ARCO's behalf. The notice of entry of judgment was filed on November 2, 1999. FFIC's notice of appeal was served by regular mail on December 23, 1999, but was not file-stamped by the clerk's office until January 3, 2000. The trial court ruled notice was presumptively received on December 27, 1999.

## FACTS

The material facts of this case are undisputed. None of the facts set forth by ARCO in its separate statement of material facts in support of motion for summary judgment were disputed by FFIC. The following summary of relevant facts derives from the trial court's order granting defendant ARCO's motion for summary judgment.

"This is an insurance coverage dispute commenced by FFIC to recover settlement and defense costs it paid on ARCO's behalf in an underlying personal injury action entitled Riddle v. Atlantic Richfield Company, Kern County Superior Court case number 231673-RA (the 'Underlying Action') . . . .

"The Underlying Action arose from an industrial accident occurring on January 16, 1996, resulting in physical injury to Sylvis Riddle. The accident took place in an annex building at ARCO's South Coles Levee Plant located in Kern County, California. Sylvis Riddle was employed by Crider Construction, Inc. (Crider), which was under contract to perform maintenance work at ARCO's South Coles plant. The accident occurred as Riddle was cleaning out an annex building at the ARCO plant. While carrying a pump motor weighing about 40 pounds, Riddle stepped off a 24-inch platform onto a 12-inch wooden step which allegedly collapsed causing serious injury to his back. The wooden step was owned and maintained by ARCO. At deposition, Riddle testified he was carrying the pump motor under the instructions from the Crider foreman.

"On July 18, 1996, Riddle filed a civil complaint for damages against ARCO in the Underlying Action. Among other things, the complaint in the Underlying Action alleged Riddle was employed by Crider as a roustabout: that ARCO was 'operating under a contract or agreement with Crider Construction Company, requiring and obligating Crider Construction Company employees to perform, among other things, cleanup, maintenance, repair, pipeline laying, ditching and other construction maintenance or repair work under the direct control, instruction and supervision of the Defendants, and each of them, at various locales around the ARCO South Coast Levy [sic], owned, operated and controlled by Defendants . . .'; that ARCO 'negligently and carelessly owned, operated, maintained, inspected and controlled said Annex Building so as to allow and permit the steps, leading into and out of said building to exist and remain in a dangerous, defective and unsafe condition;' and that, as a result of said negligence by ARCO, Riddle suffered 'severe personal injuries, disabilities and damages.'

"At the time of the accident, Crider was insured under commercial general liability insurance policy number S90MXX8062232 (the 'Policy') issued by FFIC for the period July 10, 1995 to July 10, 1996. ARCO was an additional insured under the Policy by virtue of a separate endorsement issued by FFIC entitled 'Additional Insured —Owners, Lessee or Contractors (Form B) CG 20 10 11 85' (the 'Endorsement'). When read together, the Policy and the Endorsement provided coverage for 'those sums that the insured [ARCO] becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies' 'but only with respect to liability arising out of YOUR WORK [Crider's work] for that insured [ARCO] by or for you.' The Policy defines YOUR WORK as follows

" 'a. Work or operations performed by you or on your behalf; and [¶] b. Materials, parts or equipment furnished in connection with such work or operations. [¶] "**Your work**" includes warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your work**; and [¶] b. The providing of or failure to provide warnings or instructions.'

"On September 20, 1996, ARCO tendered the defense and indemnity of the Underlying Action to FFIC. On October 31, 1996, FFIC accepted ARCO's tender of defense under a reservation of rights contending 'there remains an issue whether or not ARCO was solely negligent for the accident and whether or not the liability of this accident arises out of our insured's work for ARCO as stated in the Additional Insured Endorsement.'

"On or about July 1, 1997, FFIC paid $400,000 in full settlement of the Underlying Action while reserving to itself the right to seek reimbursement of settlement and defense costs from ARCO." (Brackets in original.)

The trial court granted ARCO summary judgment based on the analysis and holding in *Acceptance Ins. Co. v. Syufy Enterprises* (1999) 69 Cal.App.4th 321 [81 Cal.Rptr.2d 557] (*Syufy*), which it found "strikingly similar factually to the present action and the policy terms in question are identical."

DISCUSSION

I*

*Denial of Motion to Dismiss Appeal*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 842.

## II

### *Liability Arising out of the Work of Named Insured*

The standards applicable to a motion for summary judgment are well established. (See Code Civ. Proc., § 437c.) ■ We review de novo a trial court's ruling on a motion for summary judgment. (*Northland Ins. Co. v. Briones* (2000) 81 Cal.App.4th 796, 802 [97 Cal.Rptr.2d 127].)

■ The standards applicable to the interpretation of an insurance policy were recently reiterated by the Supreme Court in *Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115 [90 Cal.Rptr.2d 647, 988 P.2d 568]:

" '[I]nterpretation of an insurance policy is a question of law.' (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1 [44 Cal.Rptr.2d 370, 900 P.2d 619] (*Waller*).) 'While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply.' (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545] (*Bank of the West*).) Thus, 'the mutual intention of the parties at the time the contract is formed governs interpretation.' (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 821 [274 Cal.Rptr. 820, 799 P.2d 1253] (*AIU Ins.*).) If possible, we infer this intent solely from the written provisions of the insurance policy. (See *id.* at p. 822.) If the policy language 'is clear and explicit, it governs.' (*Bank of the West, supra*, 2 Cal.4th at p. 1264.)

"When interpreting a policy provision, we must give its terms their ' "ordinary and popular sense," ' unless "used by the parties in a technical sense or a special meaning is given to them by usage." ' (*AIU Ins., supra*, 51 Cal.3d at p. 822, quoting Civ. Code, § 1644.) We must also interpret these terms 'in context' (*Bank of the West, supra*, 2 Cal.4th at p. 1265), and give effect 'to every part' of the policy with 'each clause helping to interpret the other.' (Civ. Code, § 1641; see also *Holz Rubber Co., Inc. v. American Star Ins. Co.* (1975) 14 Cal.3d 45, 56 [120 Cal.Rptr. 415, 533 P.2d 1055, 79 A.L.R.3d 518].)

"A policy provision is ambiguous only if it is susceptible to two or more reasonable constructions despite the plain meaning of its terms within the context of the policy as a whole. (See *Foster-Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 868 [77 Cal.Rptr.2d 107, 959 P.2d 265] (*Foster-Gardner*).) The court may then 'invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of

coverage.' (*La Jolla Beach & Tennis Club, Inc.* v. *Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 37 [36 Cal.Rptr.2d 100, 884 P.2d 1048].)"

■ At the heart of this controversy is the meaning of the clause of the additional insured endorsement protecting ARCO against "liability arising out of [Crider's work] for [ARCO] by or for [Crider]." The same endorsement language was interpreted in *Syufy*, *supra*, 69 Cal.App.4th 321, and the First District held the "additional insured is covered without regard to whether the injury was caused by the named insured or the additional insured." (*Id.* at p. 330.)

FFIC asserts the holding in *Syufy* and, by implication, the majority rule[1] which it followed are wrong. First, FFIC argues the proper interpretation of the term "liability" should not focus on whether the *injury* arose out of Crider's work, but whether ARCO's *liability* for Riddle's injury arose out of Crider's work. Second, FFIC argues the phrase "liability arising out of" requires a "causal connection between the injury and the event" that exceeds mere "but for" causation. FFIC asserts there is no causal connection between Crider's work and the liability ARCO incurred to Crider's employee because the sole cause of the injury to the employee's back was ARCO's own negligence in maintaining its premises.[2] Third, FFIC argues additional insured endorsements provide limited coverage as intended in the insurance industry and based upon public policy. Fourth, FFIC briefly argues that even if it has a duty to defend, it has no duty to indemnify.

It is undisputed that the policy and the endorsement provided ARCO with coverage for "those sums that [ARCO] becomes legally obligated to pay as damages because of 'bodily injury'" and then limited this coverage to "liability arising out of" Crider's work. The $400,000 paid by FFIC in full settlement of the underlying action clearly was a sum ARCO became legally obligated to pay as damages for bodily injury as a result of the settlement. After reviewing the arguments of the parties and relevant case law, we view FFIC's position concerning the meaning of the term "liability" as, in effect, an alternative way of arguing about the proper causal connection required by

---

[1]The rule we consider as the majority is derived from cases considering additional insured endorsements; cases interpreting the phrase "liability arising out of" in automobile insurance policies represent a separate line of cases.

[2]Neither FFIC's nor ARCO's separate statement of undisputed material facts indicates ARCO's negligence as the sole cause of the injury to Riddle's back. Also, FFIC now asserts a dispute exists over whether "the 40-pound pump that Riddle was carrying . . . caused him to lose his balance and stumble and/or caused the wooden step to collapse." FFIC argues that if these facts were "material," then summary judgment was not appropriate. Even assuming FFIC preserved this issue for appeal, we hold these facts are not material to our decision.

the language of the endorsement. Consequently, we will consider the proper interpretation of the term "liability" and the phrase "arising out of" as a single issue concerning causation. This issue can be stated as whether ARCO's legal obligation to pay the $400,000 settlement to Riddle arose out of Crider's work for ARCO.

### A. Causal Connection and "Liability Arising Out Of"

FFIC acknowledges that California courts interpret the phrase "arising out of" broadly to require only minimal causal connection and contends this standard requires more than "but for" causation or "mere presence." In discussing the required causal connection, the First District stated:

"Furthermore, California courts have consistently given a broad interpretation to the terms 'arising out of' or 'arising from' in various kinds of insurance provisions. It is settled that this language does not import any particular standard of causation or theory of liability into an insurance policy. Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship. [Citations.]

"Under this commonsense approach, Weber's injury clearly 'arose out of' the work he was performing on the roof of Syufy's building. The relationship between the defective hatch and the job was more than incidental, in that Weber could not have done the job without passing through the hatch. The fact that the defect was attributable to Syufy's negligence is irrelevant, since the policy language does not purport to allocate coverage according to fault.

"This reading of AIC's additional insured endorsement is consistent with the reasoning adopted in cases from other jurisdictions concerning the effect of additional insured provisions governing liability 'arising out of "your work"' or 'arising out of operations performed' by the named insured. [Citations.]" (*Syufy*, *supra*, 69 Cal.App.4th at pp. 328-329.)

We agree with FFIC to the extent "arising out of" requires more than "but for" causation. However, contrary to FFIC's position, the connection between Crider's work and ARCO's obligation to pay for Riddle's injuries is sufficient to establish the minimal causal connection.

In the present case, Riddle was cleaning out an annex building at the ARCO plant and performing a work-related task at the time of the accident. Thus, the connection between the named insured's work and the liability-producing event is stronger in this case than it was in *Syufy* because the

accident in *Syufy* occurred while the employee of the named insured was leaving work to take his wife to the airport, not while he was performing a work-related task. In *Syufy*, the insurance company argued there was no coverage because (1) the event causing the injury, i.e., the falling hatch, occurred after the employee stopped working and was leaving the jobsite and (2) the named insured performed no work on the roof hatch. The First District held the "minimal causal connection or incidental relationship" was established because the injured employee of the named insured was performing work on a roof and had to pass through the defective hatch, the only access to the roof, to get to and from the work. (*Syufy, supra,* 69 Cal.App.4th at p. 328; accord, *Daily News, LP v. OCS Security, Inc.* (2001) 280 A.D.2d 576 [720 N.Y.S.2d 797] [liability of Daily News, the additional insured, to a visitor to its building arose out of work of the named insured security firm; while leaving for his lunch break, the employee of security firm struck the visitor with an elevator door].)

The present case factually resembles *Structure Tone v. Component Assembly Sys.* (2000) 275 A.D.2d 603 [713 N.Y.S.2d 161], wherein a worker sued the additional insured (the general contractor) for injuries sustained when he tripped and fell on a piece of electrical wiring at the construction site. The worker was an employee of a subcontractor hired by a carpentry subcontractor, the named insured, that had been hired by the general contractor. The language used in the insurance policy endorsement in *Structure Tone v. Component Assembly Sys.* was identical to the language in this case. The court ruled there was coverage because the accident arose out of the named insured's work or its subcontractor's work performed at the construction site.

Similarly, courts applying Texas law recently have joined the majority view and determined that the casual connection required by the phrase "liability arising out of" work or operations is satisfied when the employee of the named insured was injured (1) while present at the worksite and (2) in connection with performing the named insured's business. (See *Mid-Continent Cas. Co. v. Swift Energy Co.* (5th Cir. 2000) 206 F.3d 487, 498-500; *McCarthy Bros. Co. v. Continental Lloyds* (Tex.App. 1999) 7 S.W.3d 725, 730 [more than a mere presence existed because employee was carrying out a necessary part of his job for the named insured]; *Admiral Ins. Co. v. Trident NGL, Inc.* (Tex.App. 1999) 988 S.W.2d 451, 454.)

In *Marathon Ashland Pipe Line v. Maryland Cas. Co.* (10th Cir. 2001) 243 F.3d 1232, the court applied Wyoming law to a clause which provided the additional insured with coverage " 'only with respect to liability arising out

of [the named insured's] ongoing operations performed for that [additional] insured.'" (*Id.* at p. 1237.) The named insured provided temporary workers to Marathon, the additional insured, for Marathon's use to perform general roustabout work. (*Id.* at p. 1238.) One of the workers, Berg, lost a leg when the front-loader he was using to mow a steep incline overturned. The Tenth Circuit Court of Appeals concluded that under Wyoming law, "'arising out of" language as used in insurance contracts carries a 'natural consequence' level of causation. [Citations.]" (*Id.* at p. 1239.) It then applied that test for causation to the facts of the case. "We are persuaded that [the named insured's] act of hiring and paying Mr. Berg at Marathon's request and then sending him out to work under Marathon's sole direction and control was an ongoing operation out of which Mr. Berg's injuries were a natural consequence." (*Ibid.*)

In accordance with *Syufy* and the foregoing cases from other jurisdictions decided after *Syufy*, we conclude the required causal connection exists between the liability of ARCO and the work of Crider because (1) the accident occurred while Riddle was present at Crider's worksite and (2) the accident happened while Riddle was performing Crider's work at that worksite.[3]

B. *Intent and Public Policy*

Nonetheless, FFIC argues intent and public policy support its position. It cites *Pardee Construction Co. v. Insurance Co. of the West* (2000) 77 Cal.App.4th 1340, 1361 [92 Cal.Rptr.2d 443] (*Pardee*), for the proposition that "additional insured coverage is intended by the insurance industry to cover vicarious liability that an additional insured may incur due to operations of the originally named insured." This quote is taken out of context because one of the two additional insured endorsements at issue in that case contained language very different from the endorsement in this case. One of the endorsements in *Pardee* applied " 'only to the extent that [the additional insured] is held liable for [the named insured's] acts or omissions arising out of and in the course of operations performed for [the additional insured] by you or your subcontractors.'" (*Pardee, supra,* 77 Cal.App.4th at p. 1355.) Because these words limited the endorsement's coverage to vicarious liability, the generalized statement from the court in *Pardee* quoted by FFIC is not applicable to the specific language used in the endorsement in this case.

---

[3]FFIC cites numerous cases from other jurisdictions expressing a minority view, including *Granite Const. v. Bituminous Ins.* (Tex.App. 1992) 832 S.W.2d 427, *Northern Ins. Co. of N.Y. v. Austin Commercial, Inc.* (N.D.Tex. 1994) 908 F.Supp. 436, *Regent Ins. Co. v. Estes Co.* (Iowa 1997) 564 N.W.2d 846, and *Northbrook Ins. v. Am. States Ins. Co.* (Minn.Ct.App. 1993) 495 N.W.2d 450. We find these citations unpersuasive and follow the majority view expressed in *Syufy, supra,* 69 Cal.App.4th 321.

Furthermore, FFIC's position concerning the intent underlying additional insured endorsements is not supported by the undisputed evidence submitted to the trial court. We are satisfied the mutual intent of the parties expressed in the written provisions of the insurance policy is to provide coverage here. Even if extrinsic evidence were necessary to determine the extent of coverage under those written provisions, no such evidence appears in the record before us. Neither party's papers concerning the motion for summary judgment presented extrinsic evidence to the trial court relating to (1) the negotiations or discussions with the insurance company, if any, about the scope of the coverage for the additional insured or the use of particular terms in a technical sense, (2) any special meaning given to particular phrases by usage, or (3) other matters which might reflect the mutual understanding of the parties concerning the scope of coverage. Accordingly, no extrinsic evidence in the record supports FFIC's position that the parties mutually intended to limit the liability of FFIC to cover only ARCO's vicarious liability.

With respect to the words used to express the mutual intent of the parties, several courts have observed an insurance company's failure to use available language to exclude certain types of liability gives rise to the inference that the parties intended not to so limit coverage. (See *Pardee, supra,* 77 Cal.App.4th at pp. 1359-1360; *Syufy, supra,* 69 Cal.App.4th at p. 330; *Marathon Ashland Pipe Line v. Maryland Cas. Co., supra,* 243 F.3d at p. 1240, fn. 5.) For example, in *Merchants Ins. Co. of New Hampshire, Inc. v. USF&G* (1st Cir. 1998) 143 F.3d 5, 10, the court stated: "After all, if USF&G had really intended to limit coverage under the additional insured Endorsement to those situations in which an added insured such as D'Agostino was to be held vicariously liable only for the negligence of a principal insured such as Great Eastern, USF&G was free to draft a policy with qualifying language that expressly implemented that intention. [Citation.]"

In this case, FFIC chose not to include limiting language, even though courts have been broadly interpreting the language used in the endorsement, i.e., "liability arising out of," since at least 1986. (See *Casualty Ins. Co. v. Northbrook Property* (1986) 150 Ill.App.3d 472 [103 Ill.Dec. 495, 501 N.E.2d 812, 814-815].) Therefore, the words used in the endorsement do not support FFIC's position regarding an intent to limit coverage.

FFIC's public policy argument also fails. FFIC argues the endorsement should be interpreted to only provide coverage to ARCO for vicarious or derivative liability as a matter of public policy. The cases which comprise the majority view and are discussed above or in *Syufy* specifically reject an

interpretation that limits the phrase "liability arising out of" to cover only vicarious liability of the additional insured. For example, in *Marathon Ashland Pipe Line v. Maryland Cas. Co., supra,* 243 F.3d 1232, the Tenth Circuit rejected the insurance company's position that the endorsement applied only when the named insured was negligent and the additional insured was no more than vicariously liable. The Tenth Circuit observed that it had interpreted an endorsement with identical language under Kansas law and held an additional insured's liability arising out of its own negligence was covered. (*Id.,* at p. 1240; accord, *Meadow Valley Cont. v. Transcontinental Ins.* (2001) 2001 Utah App. 190 [27 P.3d 594, 597-598].)

Consequently, there is no demonstrable public policy favoring a narrow interpretation of additional insured clauses. (See Richmond & Black, *Expanding Liability Coverage: Insured Contracts and Additional Insureds* (1996) 44 Drake L.Rev. 781, 806 ["public policy may support coverage for liability attributable to the additional insured's own negligence"].) Rather, the majority view implies a public policy which favors freedom of contract and allows parties, if they so choose, to obtain coverage for the additional insured that goes beyond vicarious liability arising out of the negligence of the named insured.

### C. *Duty to Indemnify*

Finally, FFIC argues that, even if the potential for coverage gave rise to a duty on FFIC's part to defend ARCO, FFIC had no duty to indemnify ARCO "since the evidence established that ARCO's liability arose solely from its own negligence and not from Crider's work or operations." Our above discussion clearly rejects this argument.

In light of the foregoing, the trial court correctly granted ARCO's motion for summary judgment.

### DISPOSITION

The judgment is affirmed. ARCO is awarded its costs of suit incurred on appeal.

Levy, J., and Cornell, J., concurred.