**A.F. LUSI CONSTRUCTION, INC.**

v.

**PEERLESS INSURANCE COMPANY.**

No. 2002–553–Appeal.

Supreme Court of Rhode Island.

April 22, 2004.

James D'Ambra, Esq., for Plaintiff.

Raymond A. Lafazia, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

FLANDERS, Justice.

This case requires us to deconstruct various construction contracts, insurance agreements, and other related documents. In particular, we must decide whether an insurer for a subcontractor on a real-estate-construction project agreed to provide liability insurance and a defense for the general contractor with respect to a lawsuit alleging that the general contractor was negligent. After hacking our way through a dense thicket of so-called incorporation-by-reference, flow-down, and additional-insured provisions contained in the pertinent documents, we answer this question in the negative.

### Facts and Travel

While working on a real-estate-construction project for the State of Rhode Island (state), one David Genereux (Genereux), an employee of Pasquazzi Brothers, Inc. (Pasquazzi), a subcontractor on this project, suffered personal injuries from an accident and collected workers' compensation benefits from Pasquazzi's workers' compensation insurer during the period of his resulting incapacity for work. Genereaux also sued the general contractor, plaintiff, A.F. Lusi Construction, Inc. (Lusi). His complaint alleged that Lusi negligently maintained certain conditions at the job site that caused him to suffer personal injuries. In response to Genereux's negligence claims, Lusi filed a Superior Court declaratory-judgment action against the defendant, Peerless Insurance Company (Peerless), the insurer for the subcontractor, Pasquazzi. Lusi alleged that Peerless breached its contractual duty to insure Lusi and to provide it with a

defense in connection with Genereux's underlying personal-injury action. Lusi asserted that, in the policy that Peerless issued to Lusi's subcontractor, Pasquazzi, Peerless agreed to defend and indemnify Lusi with respect to claims such as those asserted in Genereux's underlying personal-injury action.

After the Superior Court denied Lusi's motion for a partial summary judgment, the court entered a final judgment in favor of Peerless. On appeal, we conclude that Lusi failed to establish an agreement by Peerless to defend or to indemnify Lusi with respect to the negligence claims asserted against Lusi in the underlying personal-injury action. Consequently, we affirm the motion justice's entry of final judgment in favor of Peerless.

In its appeal from the Superior Court judgment denying its request for a declaratory relief, Lusi points to the incorporation provision in Pasquazzi's subcontract with Lusi as the source of Pasquazzi's obligation to insure Lusi against any liability that Lusi might incur for personal injuries arising from Lusi's alleged negligence in connection with the project. Lusi also asserts that the indemnification provision in its subcontract with Pasquazzi required Pasquazzi to indemnify and hold Lusi harmless for all claims against Lusi arising out of work performed by Pasquazzi "to the extent caused in whole or in part by any negligent act or omission of the Subcontractor [Pasquazzi]." Lusi next contends that Peerless's duty to defend and indemnify Lusi arises from Pasquazzi's contractual obligation to obtain insurance for Lusi. This obligation, Lusi posits,

arises from both the so-called incorporation-by-reference and flow-down provisions contained in its subcontract with Pasquazzi and in its primary contract with the state, respectively, as well as from Lusi's status as an additional insured under Pasquazzi's general liability insurance policy with Peerless. Lusi argues that Pasquazzi undertook the same indemnity and insurance obligations with Lusi that Lusi undertook with the state. To support this contention, Lusi invokes not only the terms of its primary contract with the state, but also the provision in its subcontract with Pasquazzi that incorporates by reference the terms of Lusi's primary contract with the state. Lusi submits that Peerless was obliged to provide such insurance because Pasquazzi had a written agreement with Lusi to obtain such insurance for Lusi's benefit and because Peerless agreed in its policy with Pasquazzi "to include as an additional insured any person or organization with whom you [Pasquazzi] agreed, because of a written contract or agreement or permit, to provide insurance such as is afforded under this policy."

Peerless counters that the terms of Pasquazzi's subcontract with Lusi do not clearly and unambiguously require Pasquazzi to purchase liability insurance or to indemnify Lusi for Lusi's own negligence, which is all that Genereux alleged in his underlying personal-injury action. Thus, it contends, the trial justice did not err in refusing to rule in Lusi's favor on this issue as a matter of law. In addition, Peerless asserts that the provisions of G.L. 1956 § 6–34–1 [1] apply to bar the enforce-

---

**1.** General Laws 1956 § 6–34–1(a) provides in pertinent part:

"A covenant, promise, agreement, or understanding in, or in connection with or collateral to, a contract or agreement relative to the design, planning, construction, alteration, repair, or maintenance of

a building [or] structure * * * pursuant to which contract or agreement the promisee or the promisee's independent contractors, agents, or employees has hired the promisor to perform work, purporting to indemnify the promisee, the promisee's independent contractors, agents, employees,

ment of any agreements in which a subcontractor, such as Pasquazzi, agrees to indemnify a general contractor, such as Lusi, against third-party claims arising from the general contractor's own alleged negligence. Here, Genereux, the personal-injury plaintiff, asserted in his complaint that Lusi's negligence proximately caused his injuries. Therefore, according to Peerless, any agreements by Pasquazzi—including any agreements to purchase insurance for Lusi's benefit that purport to require Pasquazzi or its insurer to indemnify Lusi for its own negligent acts—would be unenforceable because they would violate § 6–34–1 and the public policy embodied in that law against enforcing such agreements to indemnify another party for its own negligence.

## I

### The Relevant Contract Language Does Not Evidence a Clear Intent by Peerless and Pasquazzi to Designate Lusi as an Additional Insured Under the Terms of the Peerless Insurance Policy

■■■ A reviewing court has no need to construe contractual provisions unless those terms are ambiguous. *W.P. Associates v. Forcier, Inc.*, 637 A.2d 353, 356 (R.I.1994). When the terms are clear and unambiguous, then the court should apply them as written. *Id.* In making this determination, the court should view the agreements in their entirety and give the contractual language its "plain, ordinary and usual meaning." *Id.* On appeal, this Court will deem agreements to be ambiguous when they are reasonably and clearly sus-

ceptible to more than one rational interpretation. *Id.* But if the contractual language is unambiguous, the intention of the parties must govern "if that intention can be clearly inferred from the writing and * * * can be fairly carried out in a manner consistent with settled rules of law." *Id.*

■■■ In this case, we hold that the relevant contract language does not evidence a clear intent by Peerless and Pasquazzi to designate Lusi as an additional insured under the terms of the Peerless insurance policy—at least not with respect to claims alleging that Lusi's negligence caused an employee of Pasquazzi to suffer personal injuries while working at the job site. The terms of the subcontract between Lusi and Pasquazzi provide no support for Lusi's contention that Pasquazzi was required to obtain insurance that would indemnify and provide a defense for Lusi against the negligence claims asserted in the underlying Genereux lawsuit. In fact, the provision of the Lusi–Pasquazzi subcontract that purports to address Pasquazzi's insurance obligations lacks the very information that presumably would have answered this question.

Article 9, § 9.1 of the Lusi–Pasquazzi subcontract addresses the subject of insurance and provides: "[T]he Subcontractor shall obtain the required insurance from a responsible insurer, and shall furnish satisfactory evidence to the Contractor that the Subcontractor has complied with the requirements of this Article 9." The parties failed, however, to insert any description of "the required insurance" in the space provided for doing so under Article 9 of the subcontract. Just below this section,

---

or indemnitees against liability for damages arising out of bodily injury to persons or damage to property proximately caused by or resulting from the negligence of the promisee, the promisee's independent contractors, agents, employees,

or indemnitees, is against public policy and is void; provided that this section shall not affect the validity of any insurance contract, worker's compensation agreement, or an agreement issued by an insurer."

§ 9.2 of the form contract reads: "Here insert any insurance requirements and Subcontractor's responsibility for obtaining, maintaining and paying for necessary insurance with limits equaling or exceeding those specified in the Contract Documents and inserted below, or required by law." Thus, it appears to us that if the parties had intended to describe Pasquazzi's specific insurance obligations vis-à-vis claims alleging Lusi's negligence, they would have done so in this part of the contract. But they neglected to do so by failing to describe "the required insurance," by neglecting to "insert any insurance requirements," and by leaving blank the "Subcontractor's responsibility for obtaining, maintaining, and paying for necessary insurance."

Nevertheless, Lusi maintains that the certificate of insurance that Pasquazzi provided to it constitutes evidence of the parties' intent to add Lusi as an additional insured under the Peerless policy. But the terms of this certificate provide no evidence of any obligation on Pasquazzi's part to procure insurance that would cover Genereux's negligence claims against Lusi. Rather, the insurance certificate merely says: "This certificate is issued as a matter of information only and confers no rights upon the certificate holder [Lusi]. This certificate does not amend, extend or alter the coverage afforded by the policies below." The certificate then lists the various types of insurance Pasquazzi obtained. Nowhere on the certificate is Lusi or any other party named as an additional insured; rather, the certificate states only that Pasquazzi had obtained a general liability policy, which included a "BLKT ADD'L INS" provision. Therefore, the certificate itself provides no evidence that the parties intended for Lusi to be an additional insured under Pasquazzi's policy with Peerless, let alone that Peerless would provide insurance and a defense to Lusi for claims alleging Lusi's own negligence.

## II

## Lusi Failed to Procure Pasquazzi's Agreement to Designate Lusi as an Additional Insured Under the Terms of the Peerless Insurance Policy

■ Pasquazzi's general-liability-coverage policy, issued by Peerless, provides for "additional insureds" as follows:

"Who is an insured is amended to include as an additional insured any person or organization with whom you [Pasquazzi] agreed, because of a written contract or agreement or permit, to provide insurance such as is afforded under this policy, *but only with respect to your [Pasquazzi's] operations, 'your work' or facilities owned or used by you.*" (Emphasis added.)

In addition, the insurance certificate that Pasquazzi provided to Lusi said: "Notwithstanding any requirement, term or condition of any contract or other document with respect to which this certificate may be issued or may pertain, the insurance afforded by the policies described herein is subject to all the terms, exclusions and conditions of such policies." Thus, the insurance that Peerless agreed to provide to Pasquazzi, including insurance to cover any "additional insureds," was limited by that policy's terms to include as an additional insured only "any person or organization with whom [Pasquazzi] agreed, because of a written contract or agreement or permit, to provide insurance such as is afforded under this policy."

Lusi posits that one such contractual indication that Pasquazzi agreed to provide insurance for Lusi is contained in a so-called flow-down provision in § 5.3.1 of the

primary contract between Lusi and the state. Significantly, however, Pasquazzi was not a party to that contract and Lusi furnished us with no evidence that Pasquazzi ever agreed to assume toward Lusi all the insurance obligations and responsibilities that Lusi assumed toward the state and the project's architect. Moreover, § 5.3.1 contains a significant limitation on Lusi's obligation to require each subcontractor to assume toward Lusi all the obligations and responsibilities that Lusi assumed toward the owner and the architect. Thus, § 5.3.1 provides:

> "By appropriate agreement, written where legally required for validity, the Contractor [Lusi] shall require each Subcontractor [Pasquazzi], *to the extent of the Work to be performed by the Subcontractor* [Pasquazzi], to be bound to the Contractor [Lusi] by terms of the Contract Documents, and to assume toward the Contractor [Lusi] all the obligations and responsibilities which the Contractor [Lusi], by these Documents, assumes toward the Owner [the State] and Architect." (Emphasis added.)

Thus, pursuant to this contract language, Lusi had to satisfy three prerequisites before it could qualify as an additional insured under the policy Peerless issued to Pasquazzi: (1) it had to prove the existence of an agreement on Lusi's part to provide insurance for the state and the architect that would indemnify them for Lusi's alleged negligence; (2) it had to prove the existence of an agreement on Pasquazzi's part to assume toward Lusi the same insurance obligations and responsibilities that Lusi had assumed toward the state and the project's architect; and (3) it had to show that such an agreement by Pasquazzi would cover the alleged negligence in the underlying lawsuit because such a claim related to "the extent of the work to be performed" by Pasquazzi. As discussed in this opinion, Lusi failed on all three counts to qualify as an additional insured under the Peerless policy.

Because the parties failed to provide specifically for Pasquazzi's insurance obligations in the subcontract—leaving blank that portion of the subcontract that called for a specific description of such insurance obligations—Lusi asks this Court to deduce as much by following a vanishing trail of contractual breadcrumbs that winds through the various provisions of the subcontract, the primary contract, the Peerless insurance policy, and the insurance certificate that Pasquazzi provided to Lusi. In doing so, however, we inevitably find ourselves lost in the woods of inapposite contract language.

Lusi first suggests that the indemnification provision in its subcontract with Pasquazzi, § 11.11.1, shows that Pasquazzi agreed to obtain insurance for the benefit of Lusi. The terms of the indemnification provision, however, are conspicuously silent with respect to any obligation on Pasquazzi's part to provide insurance for Lusi.[2] A contractual duty to "indemnify

---

**2.** Section 11.11.1 of the subcontract provides, in pertinent part:

> "To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, the Architect and the Contractor and all of their agents and employees from and against all claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the Subcontractor's Work under this Subcontract, provided that any such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, to the extent caused in whole or in part by any negligent act or omission of the Subcontractor * * * regardless of whether it is caused in part by a party indemnified hereunder."

and hold harmless" is not the legal equivalent of a duty to procure insurance coverage for that indemnity obligation. Thus, § 11.11.1 of the subcontract neither required Pasquazzi to obtain insurance for Lusi, nor did it provide support for Lusi's contention that it was an additional insured under the Peerless policy.

Lusi next insists that Pasquazzi agreed to insure Lusi via the so-called incorporation provision in its subcontract with Lusi and in the flow-down provision in Lusi's primary contract with the state. Article 1, § 1.1 of the Lusi–Pasquazzi subcontract contains an incorporation provision that reads:

> "The Contract Documents for this Subcontract consist of this Agreement and any Exhibits attached hereto, the Agreement between the Owner and Contractor dated as of Jan. 21, 1999, [and] the Conditions of the Contract between the Owner and Contractor (General, Supplementary and other Conditions) * * *. These form the Subcontract, and are as fully a part of the Subcontract as if attached to this Agreement or repeated herein."

Additionally, the primary contract between Lusi and the state contained a so-called flow-down provision in § 5.3.1 that provides:

> "By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, *to the extent of the Work to be performed by the Subcontractor*, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities which the Contrac-

tor, by these Documents, assumes toward the Owner and Architect." (Emphasis added.)

But Lusi provided no evidence that it ever obtained such an "appropriate agreement" from Pasquazzi. Section 5.3.1 of Lusi's primary contract with the state does not say that Pasquazzi agreed to be bound by the terms of the primary contract; rather, it says that Lusi will *require* Pasquazzi to agree to be bound, but only "to the extent of the [w]ork to be performed by the [s]ubcontractor." Thus, for Pasquazzi to be so bound, Lusi must have obtained Pasquazzi's agreement to that effect. Absent a promise by Pasquazzi to assume toward Lusi "all the obligations and responsibilities" that Lusi assumed toward the state, the mere incorporation-by-reference provision in Article 1, § 1.1 did not accomplish such a result because the mere inclusion of Lusi's promises to the state in the subcontract between Lusi and Pasquazzi did not convert Lusi's promises into Pasquazzi's promises.

The United States Supreme Court has held that a reference in a subcontract to the main or primary contract or to any other extraneous writing, made for a particular purpose, makes it part of the subcontract only for the purpose specified. *Guerini Stone Co. v. P.J. Carlin Construction Co.*, 240 U.S. 264, 277, 36 S.Ct. 300, 60 L.Ed. 636 (1916). In *United States Steel Corp. v. Turner Construction Co.*, 560 F.Supp. 871, 873 (S.D.N.Y.1983), the contract in question contained incorporation and flow-down provisions that were both similar to and different from the ones at issue here.[3] In that case, the court deter-

---

**3.** The language of the incorporation provision at issue in *United States Steel Corp.* was self-executing because the primary contract included language whereby the subcontractor *directly agreed* to be bound to the owner and

to the general contractor. In contrast, the language of § 5.3.1 in the primary contract between Lusi and the state only required Lusi to obtain Pasquazzi's agreement to be bound. Thus, the primary-contract provision in *Unit-*

mined that a forum-selection clause in the general contract did not bind the subcontractor in an action against the general contractor. The court held "[t]here is no forum selection clause in the subcontract and * * * the incorporation by reference of the conditions of the prime contract does not * * * extend beyond the scope, quality, character and manner of performance of the subcontracted work." *Id.* at 874. Likewise, in *H.W. Caldwell & Son, Inc. v. United States ex rel. John H. Moon & Sons, Inc.*, 407 F.2d 21, 23 (5th Cir. 1969), involving a suit brought under the Miller Act, 40 U.S.C. § 270(a), the court determined that a subcontractor was not bound by the arbitration clause of a general contract. The court held that "a general incorporation by reference of the terms of the principal contract * * * refers only to the quality and manner of the subcontractor's work, not the rights and remedies he may have against the prime contractor." *H.W. Caldwell & Son, Inc.*, 407 F.2d at 23. *See also Washington Metropolitan Area Transit Authority v. Norair Engineering Corp.*, 553 F.2d 233, 235 (D.C.Cir. 1977) (incorporation-by-reference and flow-down provisions in the subcontract incorporated only matters regarding work specifications and performance and not the arbitration clause of the primary contract); *S. Leo Harmonay, Inc. v. Binks Manufacturing Co.*, 597 F.Supp. 1014, 1026 (S.D.N.Y.1984) (incorporation by reference

into the subcontract of the terms of the primary contract does not bind a subcontractor to a "no damages for delay" mechanism for resolving disputes because the subcontractor is not a party to the primary contract and has no rights thereunder). *But see Turner Construction Co. v. Midwest Curtainwalls, Inc.*, 187 Ill.App.3d 417, 135. Ill.Dec. 14, 543 N.E.2d 249, 252 (1989) (when viewing contract as a whole, which included incorporation and flow-down provisions, the court held that the parties intended the subcontract to incorporate the general contract's arbitration clause); *Sime Construction Co. v. Washington Public Power Supply System*, 28 Wash. App. 10, 621 P.2d 1299, 1303 (1980) (incorporation clause was general and unlimited, thus both the contract specifications and procedural provisions of the prime contract, including notice requirements for damage claims due to delay, were incorporated by reference into the subcontract).

## III

### The Record Does Not Reveal to What Extent the Primary Contract Required Lusi to Procure Insurance from Its Subcontractors

In this case, as previously noted, the mere incorporation of the primary contract between Lusi and the state—including the general and supplementary condi-

---

ed States Steel Corp. said: "[T]he Subcontractor agrees to be bound to the Owner and to [the General Contractor] by each and all of the terms and provisions of the General Contract and the other Contract Documents, and to assume toward the Owner and [the General Contractor] all of the duties, obligations and responsibilities that [the General Contractor] by those Contract Documents assumes toward the Owner * * *." *United States Steel Corp. v. Turner Construction Co.*, 560 F.Supp. 871, 873 (S.D.N.Y.1983). When the subcontractor agreed to incorporate that provision into the subcontract, it thereby bound itself to assume

those provisions of the primary contract that related to the scope, quality, character, and manner of the work that the subcontractor agreed to perform. *Id.* at 873–74. But the provision in the Lusi-state primary contract, however, says only: *"By appropriate agreement * * * the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound * * *."* (Emphases added.) Significantly, there is no similar language in the Lusi–Pasquazzi subcontract under which Pasquazzi agreed to be bound to the state and to Lusi by each and all terms of the primary contract.

tions—into the subcontract between Lusi and Pasquazzi, does not allow us to ascertain what obligations, if any, that Pasquazzi may have agreed to undertake with respect to the procurement of insurance. This is especially so because Lusi has not provided us with all the general and supplementary conditions in its primary contract with the state that may be relevant to this issue. Attached to Lusi's brief to this Court are only certain portions of its primary contract with the state. But Lusi never included the entire primary contract as part of the record. And those contractual excerpts that Lusi has appended to its brief do not include a complete description of Lusi's insurance obligations to the state pursuant to the primary contract. For example, § 11.1.1 of Lusi's primary contract with the state provides as follows:

> "The Contractor [Lusi] shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor from *claims set forth below* which may arise out of or result from the Contractor's operations under the Contract and for which the Contractor may be legally liable, whether such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable." (Emphasis added.)

Included in this section is the language of § 11.1.1.7 that requires Lusi to procure insurance to cover "claims involving contractual liability insurance applicable to the Contractor's obligations under Paragraph 3.18." But Lusi did not provide us or the Superior Court with copies of paragraph 3.18 or with any other evidence concerning the contract language contained in paragraph 3.18, the nature of "claims set forth below," or the text of any other provision that explicitly required Lusi to obtain insurance to indemnify the state for claims arising out of the state's negligence, Lusi's negligence, or that of any subcontractor.

■ If the parties do not provide the reviewing court with the pertinent contract provisions, it cannot resolve questions of contract interpretation. *McGee v. Local 682 of the Brotherhood of Painters, Decorators and Paperhangers of America, A.F. of L.,* 69 R.I. 1, 3, 30 A.2d 461, 462 (1943). Even if the incorporation and flow-down provisions of the contracts here resulted in the parties to the subcontract assuming the "correlative position of the parties to the prim[ary] contract," *Industrial Indemnity Co. v. Wick Construction Co.,* 680 P.2d 1100, 1104 (Alaska 1984), the record lacks sufficient information from which this Court may discern to what extent the primary contract required Lusi to procure insurance from its subcontractors that would be for the benefit of either Lusi or the state, much less to what extent Pasquazzi agreed to do so. As such, the "correctness of * * * [Lusi's] basic contention[] cannot now be determined from such a record." *McGee,* 69 R.I. at 3, 30 A.2d at 462.

## IV

## An Agreement by Pasquazzi to Procure Insurance to Indemnify Lusi for Lusi's Own Negligence Would Exceed the Express Limitations in § 5.3.1 of the Primary Contract and the Additional–Insureds Provision of the Peerless Insurance Policy

■ Section 5.3.1 of the primary contract between Lusi and the state suggests that Lusi agreed only to have each subcontractor assume toward Lusi those obligations that Lusi assumed toward the owner and the architect, but only "to the extent of the [w]ork to be performed by

the [s]ubcontractor." This indicates that Lusi was not required to have Pasquazzi indemnify Lusi for Lusi's own negligence because that would exceed "the extent of the [w]ork to be performed by the [s]ubcontractor."

Likewise, even if Lusi was an "additional insured" pursuant to the Peerless policy, we are unable to say that the language of the additional-insureds clause of the policy provides insurance coverage for the claim that Genereux brought against Lusi. The additional-insureds provision limited coverage to Pasquazzi's "operations," "work[,] or facilities owned or used by" Pasquazzi. Therefore, given this limitation on the coverage, even if the Peerless insurance policy covered Lusi as an additional insured, it does not appear to us that Peerless agreed to indemnify or defend Lusi in connection with claims asserting Lusi's own negligence.

Lusi cites a number of cases for the proposition that "additional insureds" provisions, such as the one contained in Pasquazzi's general liability policy that Peerless issued, have been interpreted to protect the additional insured against liability arising from the additional in-

sured's own negligence.[4] These cases, however, are distinguishable from this one because, for the most part, they interpreted different policy language than the language used in the Peerless policy.[5] Many of the policies interpreted in the cases cited by Lusi used the term "arising out of" or "arising from" work or operations of the insured. *McIntosh v. Scottsdale Insurance Co.*, 992 F.2d 251, 254 (10th Cir.1993); *Fireman's Fund Insurance Companies v. Atlantic Richfield Co.*, 94 Cal.App.4th 842, 115 Cal.Rptr.2d 26, 30 (2001); *Acceptance Insurance Co. v. Syufy Enterprises*, 69 Cal.App.4th 321, 81 Cal.Rptr.2d 557, 559 (1999); *Township of Springfield v. Ersek*, 660 A.2d 672, 676 (1995). The language of the policy at issue here, however, does not include claims that "arise out of" Pasquazzi's operations. Rather, the policy uses the more limited language that the Peerless insurance will extend to additional insureds "only with respect to" Pasquazzi's operations, work, or facilities that Pasquazzi owned or used.

More importantly, in all the cases cited above, the parties clearly designated the entity claiming coverage as an "additional insured" by either naming that entity spe-

---

4. *See McIntosh v. Scottsdale Insurance Co.*, 992 F.2d 251 (10th Cir.1993); *Philadelphia Electric Co. v. Nationwide Mutual Insurance Co.*, 721 F.Supp. 740 (E.D.Pa.1989); *Fireman's Fund Insurance Companies v. Atlantic Richfield Co.*, 94 Cal.App.4th 842, 115 Cal. Rptr.2d 26 (2001); *Acceptance Insurance Co. v. Syufy Enterprises*, 69 Cal.App.4th 321, 81 Cal.Rptr.2d 557 (1999); *Florida Power & Light Co. v. Penn America Insurance Co.*, 654 So.2d 276 (Fla.Dist.Ct.App.1995); *Lim v. Atlas–Gem Erectors Co.*, 225 A.D.2d 304, 638 N.Y.S.2d 946 (N.Y.App.Div.1996); *Township of Springfield v. Ersek*, 660 A.2d 672 (Pa. Commw.Ct.1995).

5. In all but three of these cases, the language employed in the insurance contracts is the "arising out of" language discussed above. In *Lim* and *Florida Power & Light Co.*, howev-

er, the language employed in the insurance contracts is the same as the provision of the Peerless policy at issue here; namely, "with respect to operations." *Florida Power & Light Co.*, 654 So.2d at 277; *Lim*, 638 N.Y.S.2d at 947. The courts in these two cases relied upon the reasoning used in the cases involving the language "arising out of" and failed to acknowledge any distinction between the scope of these two different phrases. In *Philadelphia Electric Co.*, 721 F.Supp. at 742, the contract language provided that the plaintiff was an additional insured "for any work performed by [the defendant]." In that case, the court determined that the language used was broad and, had the parties intended to limit the liability to vicarious liability, they should have used more specific, limiting language. *Id.*

cifically as an additional insured, or by indicating in an otherwise clear and unequivocal manner that the entity asserting the entitlement to coverage qualified as an "additional insured" under the policies at issue. Here, as discussed previously, no such clear designation of Lusi as an additional insured exists.

V

**We Need Not Decide Whether an Agreement by One Party to a Construction Contract to Procure Insurance for Another Party's Alleged Negligence Violates § 6–34–1**

█ Assuming *arguendo* that Pasquazzi and Peerless were under a contractual duty to insure Lusi against claims based upon Lusi's own alleged negligence, the question arises whether the anti-indemnification provisions of § 6–34–1 would render unenforceable a subcontractor's agreement to procure insurance that would indemnify the general contractor for that general contractor's own negligence, as opposed to agreements in which the subcontractor itself promises to indemnify the general contractor for the subcontractor's negligence. Notably, § 6–34–1(a) says that "this section shall not affect the validity of any insurance contract * * * or an agreement issued by an insurer," and § 6–34–1(b) adds that "[n]othing in this section shall prohibit any person from purchasing insurance for his or her own protection * * *."

█ This Court has interpreted the provisions of § 6–34–1 to invalidate agreements between contractors in which a subcontractor has agreed to indemnify a general contractor for the latter's own negligence. *Cosentino v. A.F. Lusi Construction Co.*, 485 A.2d 105, 107 (R.I.1984). This same statute, however, permits agreements in which the subcontractor indemnifies the general contractor for

claims arising from the subcontractor's own negligence. *Id.* In *Cosimini v. Atkinson–Kiewit Joint Venture*, 877 F.Supp. 68, 72 (D.R.I.1995), for example, the court interpreted the insurance-procurement clause of a construction contract to require the subcontractor to indemnify the general contractor only to the extent of the subcontractor's own negligence. The court acknowledged that "[i]t is true * * * § 6–34–1 does not, by its terms, require [the court] to nullify a clause clearly requiring a subcontractor to procure insurance to cover a general contractor's negligence." *Cosimini*, 877 F.Supp. at 72. The court went on to reason, however, that, "[t]he scope of the insurance that [the subcontractor] was obligated to procure is determined by the scope of the indemnity obligation, as it is legally required to be performed. Because [the court has] * * * narrowed [the subcontractor's] performance obligation under the indemnity clause, the insurance obligation, by its own language, is equally limited." *Id.* at 72–73.

Other courts, however, when interpreting statutory provisions similar to those found in § 6–34–1, have upheld agreements by a subcontractor to purchase insurance for a general contractor—even though the insurance would indemnify the general contractor against claims for damages resulting from the general contractor's own negligence. *See, e.g., Lulich v. Sherwin–Williams Co.*, 799 F.Supp. 64, 69 (N.D.Ill.1992); *Holmes v. Watson–Forsberg Co.*, 488 N.W.2d 473, 475 (Minn.1992); *Meadow Valley Contractors, Inc. v. Transcontinental Insurance Co.*, 27 P.3d 594, 598 (Utah Ct.App.2001). In *Meadow Valley*, for example, the court distinguished agreements to indemnify from agreements to purchase insurance by deciding that the statute invalidates only agreements requiring one party in a construction contract "to personally insure against liability stem-

ming from the other party's negligence."
*Meadow Valley Contractors, Inc.,* 27 P.3d
at 598. The court reasoned that a promise
by one party to purchase insurance for
another did not make that promisor an
indemnitor, but merely allocated the cost
of procuring insurance to that party; thus,
it was not void under the statute. *Id.*

In this case, however, we need not decide whether § 6–34–1 invalidates insurance-procurement agreements because
Lusi has failed to prove that it obtained
any "appropriate agreement" from Pasquazzi to assume the same insurance-related duties and obligations toward Lusi that
Lusi assumed toward the state. Moreover, the parties have not provided this
Court with an adequate record of the contract provisions in question from which we
could determine exactly what kind of insurance Lusi was required to procure for
the state, much less whether Pasquazzi
agreed to procure insurance for Lusi's own
negligence. Additionally, given that Lusi's
obligations to the state to obtain similar
promises from its subcontractors appear to
be limited by "the extent of the [w]ork to
be performed by the [s]ubcontractor," we
hold that Lusi provided insufficient evidence to support its claim that it was
entitled to a defense and to indemnification
from Peerless under its policy with Pasquazzi for claims alleging Lusi's own negligence.

## Conclusion

Thus, we affirm the motion justice's entry of final judgment in favor of Peerless.