Jose MENDEZ

v.

Jose BRITES et al.

No. 2001–230–Appeal.

Supreme Court of Rhode Island.

June 4, 2004.

330

David N. Bazan, Donald J. Maroney, Providence, for Plaintiff.

Thomas A. Bender, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

OPINION

FLANDERS, Justice.

This is an automobile-accident case involving a Massachusetts insurance policy. The policy did not provide liability coverage to the insured motorist for bodily injury claims arising from accidents occurring in Rhode Island. The insured motorist was a Massachusetts resident who was driving his Massachusetts-registered vehicle in this state when be became involved in a three-car accident here. Together with a Rhode Island motorist who also was involved in the accident, the insured motorist now seeks to reform his automobile-liability policy to cover various bodily injury, contribution, and indemnification claims arising from the accident.

The insurer that issued the policy did so in Massachusetts to a Massachusetts resident who registered his insured vehicle in Massachusetts. Although the policy covered bodily injury claims arising from automobile accidents occurring within the Commonwealth of Massachusetts, the insured motorist chose not to obtain similar coverage for accidents occurring outside Massachusetts. Consistent with Massachusetts law, the insurer had offered its insured a policy that, if he had selected the additional-coverage option, would have provided him with out-of-state liability coverage.

Does such a policy conflict with applicable Rhode Island law when the insured motorist drives his covered automobile into Rhode Island and gets into an accident here? If so, should the policy be reformed to include coverage for accidents occurring in Rhode Island?

Because we answer the first question in the negative, we have no warrant or need to reform the insurance policy. Indeed, we discern no conflict between Massachusetts and Rhode Island law concerning this

optional limitation on territorial coverage in Massachusetts-issued automobile-liability policies. Thus, we affirm a Superior Court summary judgment in favor of the insurer, defendant Metropolitan Property and Casualty Insurance Company (Metropolitan).

## Facts and Travel

The plaintiff, Jose Mendez (Mendez), and Metropolitan's codefendant, Jose Brites (Brites), who drove the Massachusetts-insured vehicle, appeal from the Superior Court judgment in this case. On March 10, 1998, Mendez, a Rhode Island resident, and Brites, a Massachusetts resident, were involved in a three-car accident on Route 146 in Providence (the March 10 accident). A third vehicle, owned and operated by Nouen Doak (Doak), also was involved in the accident. The Brites vehicle struck Doak's vehicle. Mendez's vehicle then collided with Brites's vehicle. At the time of this accident, Metropolitan insured Brites and his automobile with a liability policy that it issued to Brites in Massachusetts for a car that Brites garaged in Massachusetts. Although the policy provided Brites with liability insurance only for bodily injuries arising out of Massachusetts accidents, its provisions to that effect were consistent with Massachusetts law.[1] Moreover, when he procured this policy, Brites did not purchase the optional additional insurance coverage that Metropolitan offered (per Massachusetts law requiring it to do so) that would have insured him for bodily injury liability to others resulting from accidents occurring in Rhode Island and in other places outside the Commonwealth of Massachusetts.

■ On March 2, 2001, Mendez filed a declaratory-judgment action in Superior Court against Brites and Metropolitan.[2]

1. Although insurers in Massachusetts must offer such additional coverage for out-of-state accidents, Massachusetts law does not require the insured to accept it, nor does it require the insurer to include it in the policy if the insured does not select this optional coverage. Also, as explained later in this decision, Rhode Island law does not require insurers—who issue automobile liability policies in other states to nonresidents such as Brites—to insure them for accidents occurring in Rhode Island.

2. Under G.L.1956 § 27–7–2, entitled "Remedies of injured party against insurer," "[a]n injured party * * * in his or her suit against the insured, shall not join the insurer as a defendant" absent a *"non est inventus"* return of process or the satisfaction of other specified conditions precedent, none of which are present here. Assuming, *arguendo*, that Mendez would qualify as an "injured party" under § 27–7–2 (even though he is only asserting indemnification and contribution claims against Brites, but not claims for any alleged personal injuries that he might have suffered in the accident), most courts would hold that the absence of privity of contract between an injured-party claimant and the alleged tortfeasor's insurer bars not only a direct damages

action but also a declaratory-judgment action against that insurer. *See All Around Transport, Inc. v. Continental Western Insurance Co.*, 931 P.2d 552, 556 (Colo.Ct.App.1996); *St. Paul Fire & Marine Insurance Co. v. Medical Protective Co. of Fort Wayne, Indiana*, 675 S.W.2d 665, 667 (Mo.Ct.App.1984); *DeMent v. Nationwide Mutual Insurance Co.*, 142 N.C.App. 598, 544 S.E.2d 797, 801 (2001). *Accord* 15 Eric Mills Holmes, *Holmes' Appleman on Insurance 2d* § 112.10 at 338 (2000); 7 Lee R. Russ et al., *Couch on Insurance 3d* § 104:2 at 104–10 to 104–11 (1997). Thus, in Rhode Island and in most other jurisdictions, an injured party lacks standing to maintain a direct action for damages against a tortfeasor's insurer until and unless the injured party has secured a judgment against the tortfeasor. *See, e.g., Canavan v. Lovett, Schefrin and Harnett*, 745 A.2d 173, 174–75 (R.I.2000) (per curiam); *Farmers Insurance Exchange v. District Court for the Fourth Judicial District*, 862 P.2d 944, 948 (Colo.1993).

At least one other court, however, has held that an injured party can maintain a declaratory-judgment action against the alleged tortfeasor's insurer. In *Bankers Trust Co. v. Old Republic Insurance Co.*, 959 F.2d 677, 682

In doing so, he sought to reform the language in the insurance policy that Metropolitan issued to Brites. Specifically, he asked the court to declare that Metropolitan was required to provide Brites with liability coverage for bodily injuries to others resulting from automobile accidents, such as the March 10 accident, that occurred outside the Commonwealth of Massachusetts and, more specifically, in Rhode Island.[3] On April 2, 2001, Brites filed a

(7th Cir.1992), the court stated that "the victim of an insured's tort, even though he is not a third-party beneficiary of his injurer's insurance policy, has a legally protectable interest in that policy before he has reduced his tort claim to judgment." This injury was sufficient to confer standing upon the injured party to bring a declaratory-judgment action against the insurer. *See also Shingleton v. Bussey*, 223 So.2d 713, 715 (Fla.1969) (parties who enter into an automobile insurance policy intend to benefit those injured as a result of the insured's negligence; as such, injured parties are third-party beneficiaries and "a direct cause of action * * * inures to a third party beneficiary against an insurer in motor vehicle liability insurance coverage cases"); *Gothberg v. Nemerovski*, 58 Ill.App.2d 372, 208 N.E.2d 12, 19–20 (1965) (holding that an injured party is an intended third-party beneficiary under an automobile insurance policy). To support upholding the injured party's standing to sue the insurer in a declaratory-judgment action, the court in *Bankers Trust Co.* reasoned as follows:

"[S]uppose that * * * before [the injured party] could feasibly bring a tort suit, let alone obtain a judgment, the insurer declared the liability insurance policy void; and * * * the insured had no other assets. Then a tort suit would be worthless unless the insured's victim could obtain a declaration that the policy was valid after all." *Bankers Trust Co.*, 959 F.2d at 682.

Given this conflict of authority, and mindful that no party in this case properly has briefed and argued whether Mendez constitutes an "injured party" under § 27–7–2 who would, therefore, lack standing to bring this suit, we shall assume, without deciding, that Mendez possessed the requisite standing to bring this declaratory-judgment action against Metropolitan pursuant to G.L.1956 chapter 30 of title 9, the Uniform Declaratory Judgments Act. Section 9–30–2 provides, in pertinent part that "[a]ny person interested under a * * * written contract * * * or whose rights, status, or other legal relations are affected by a * * * contract * * * may have determined any question of construction or validity arising under the * * * contract * * * and obtain a declaration of rights, status, or other legal relations thereunder." Thus, without deciding the question, we shall assume, *arguendo*, that Mendez's "rights, status, or other legal relations" were "affected by" Brites's insurance contract with Metropolitan, that Mendez was not subject to the bar of § 27–7–2 because he was not an "injured party" under that statute, that Mendez had an interest in obtaining indemnification and/or contribution from Brites, and that the scope of coverage provisions in the Metropolitan insurance policy issued to Brites would affect this interest. In any event, even if Mendez lacked standing to maintain a declaratory-judgment action against Metropolitan because of § 27–7–2 or because he was not a party to the Brites–Metropolitan policy, Brites clearly possessed standing to do so as a party to that contract. Thus, because Brites filed a cross-complaint against Metropolitan in this case and sought a declaratory judgment that the liability coverage in his policy included bodily injury claims arising from Rhode Island accidents, the issue is properly before us regardless of whether Mendez possessed standing to litigate this question.

3. As discussed above, the Doak vehicle also was involved in the March 10 accident. On March 5, 1999, Doak and her passenger filed a Superior Court complaint against Mendez, asserting that Mendez was negligent in driving his motor vehicle and that his negligence resulted in personal injury and property damage to Doak (No. PC 1999–1161). Thereafter, on July 29, 1999, Mendez filed a third-party complaint for contribution and/or indemnification against Brites, alleging that Brites's negligence was the sole cause of Doak's damages. Mendez then filed this separate declaratory-judgment action against Brites and Metropolitan (No. PC 2001–1067), to which Brites responded by filing a cross-claim against Metropolitan. After granting Metropolitan's summary-judgment motion and entering a judgment under Rule 54(b) of the Superior Court Rules of Civil Procedure, the court consolidated Doak's negligence lawsuit and Mendez's declaratory-judgment action on May 14, 2001.

cross-complaint against Metropolitan, also seeking a declaratory judgment that would reform his Metropolitan insurance policy. He suggested that Rhode Island law required Metropolitan to provide him with insurance coverage for bodily injury claims arising out of the March 10 accident in Rhode Island and that the purported territorial limitation in the Metropolitan policy—effectively excluding coverage for accidents occurring outside Massachusetts—was invalid.

In due course, Metropolitan moved for summary judgment, asserting that, in accordance with Massachusetts law, it had offered Brites "extra-territorial coverage"—that is, coverage for claims alleging bodily injuries in connection with accidents occurring outside Massachusetts—but that Brites chose not to purchase such additional coverage. After a motion justice of the Superior Court heard oral arguments on this motion, the court granted summary judgment in favor of Metropolitan and entered a judgment according to Rule 54(b) of the Superior Court Rules of Civil Procedure.

On appeal, Mendez and Brites argue that this Court should not enforce the Massachusetts-coverage limitation in Brites's Metropolitan insurance policy. They contend that enforcing this liability-limiting language would conflict with Rhode Island law and public policy on this subject. They maintain that the General Assembly, in the Motor Vehicle Reparations Act, G.L.1956 chapter 47 of title 31 (the act), provided that the public policy of the state "is to require motorists to have

financial responsibility when operating a motor vehicle on Rhode Island roadways." Thus, they contend, the exclusionary language of the Metropolitan policy contravenes Rhode Island law and public policy.[4] Lastly, they insist that the application of Rhode Island law to this contract would not violate the Full Faith and Credit Clause of the United States Constitution. When, as here, the application of an out-of-state law to an accident in the forum state would violate the public policy of the forum state, they suggest that the forum state may apply its own law to the facts of the case, notwithstanding the Full Faith and Credit Clause of the United States Constitution.

Metropolitan counters that the Massachusetts statute authorizing optional liability coverage for bodily injuries occurring outside Massachusetts does not conflict with Rhode Island law or public policy. Rhode Island law, it says, does not purport to regulate the coverage that insurers provide in the out-of-state insurance policies that they issue to their insureds who reside in states other than Rhode Island. It points out that Rhode Island addresses the risk of accidents in Rhode Island involving uninsured or underinsured motorists, such as Brites. Indeed, Metropolitan suggests that the Rhode Island General Assembly anticipated this very situation when, pursuant to G.L.1956 § 27–7–2.1, it required Rhode Island insurers to procure a signed release from their insured customers who opt not to purchase uninsured motorist coverage. The release admits that they

---

4. As authority for their contention, Mendez and Brites cite an unpublished Superior Court order in a 1997 case in which they allege that the court accepted an "identical argument" to the one they assert here. Article I, Rule 16(h) of the Supreme Court Rules of Appellate Procedure provides, however, that "[u]npublished orders will not be cited by

the Court in its opinions and such orders will not be cited by counsel in their briefs. Unpublished orders shall have no precedential effect." Therefore, we have not considered this unpublished order in our determination of this appeal. In any event, such an order, whether published or not, would not have been binding on this Court.

have been informed of the risk that such motorists pose to the driving public.

Metropolitan next argues that, even if there were a choice of law issue here, Massachusetts law still would govern the case under either the *lex loci contractus* rule or the interest-weighing approach to conflict-of-law questions. Lastly, Metropolitan urges that reformation of the contract language in this case would violate the Due–Process and Full–Faith–and–Credit clauses of the United States Constitution because it has insufficient contacts with the State of Rhode Island to allow Rhode Island law to apply in this case. Such an application, Metropolitan also says, would infringe on the sovereignty of the Commonwealth of Massachusetts.

### Analysis

**Rhode Island Law and Public Policy Does Not Conflict with the Massachusetts Law Allowing Massachusetts Insureds to Elect Liability Coverage Only for Motor–Vehicle Accidents Occurring in the Commonwealth**

Mendez and Brites assert that the enforcement of the Massachusetts-coverage provision in Brites's Metropolitan insurance policy—one that limits Brites's motor-vehicle liability coverage for bodily injuries to only those losses resulting from accidents occurring in the Commonwealth of Massachusetts—contravenes Rhode Island law and public policy. But does it really conflict with Rhode Island law on this subject? For the reasons adduced below, we answer this question in the negative.

Metropolitan issued a liability policy to Brites, a Massachusetts resident, in Massachusetts for a vehicle that he registered and garaged in Massachusetts. The section entitled "Compulsory Insurance" provided that "Under this Part, we will pay damages to people injured or killed by *your auto* in Massachusetts accidents." And the section of the policy entitled "Optional Insurance" provided:

"This Part is similar to Compulsory Bodily Injury To Others (Part 1). Like the Compulsory Part, this Part pays for accidents involving *your auto* in Massachusetts. Also like the Compulsory Part, this Part does not pay for the benefit of anyone using an auto without the consent of the owner.

*Unlike the Compulsory Part, this Part does provide coverage for injuries to guest occupants and for accidents occurring outside Massachusetts."* (Emphasis added.)

Massachusetts law permits insurers to issue exactly this kind of Massachusetts-only insurance coverage to Massachusetts residents when such insureds choose not to purchase the optional additional insurance coverage that this same law requires the insurers to offer them. Thus, the Massachusetts General Laws define a "[m]otor vehicle liability policy" as "a policy of liability insurance which provides indemnity for or protection to the insured * * * against loss by reason of the liability to pay damages to others for bodily injuries * * * arising out of the ownership, operation, maintenance, control or use of such motor vehicle *upon the ways of the commonwealth."* Mass. Gen. Laws Ann. ch. 90, § 34A (West 2001). (Emphasis added.) But chapter 175 of the Massachusetts General Laws also provides, in pertinent part:

"[N]o company shall issue such motor vehicle liability policies or act as surety upon such motor vehicle liability bonds unless it makes a *mandatory offer* to issue to any person purchasing such policy or bond, *at his option,* additional coverage, beyond that required by section thirty-four A of chapter ninety * * * of the combination of *bodily inju-*

*ry liability off the ways of the common-wealth* and liability for guest occupants on and off the ways of the common-wealth * * *." Mass. Gen. Laws Ann. ch. 175, § 113C (West 1998). (Emphases added.)

Therefore, pursuant to ch. 175, § 113C, an insurer such as Metropolitan must offer its Massachusetts insureds optional additional insurance coverage for bodily injury liability that occurs "off the ways of the commonwealth." Although insurers must offer such additional coverage, they are not required to issue it unless the insured opts to purchase this additional coverage. Thus, it is up to the insured to decide whether he or she elects to purchase such additional coverage.

■ Rhode Island law does not directly conflict with ch. 175, § 113C of the Massachusetts General Laws. In this state, to register a motor vehicle in Rhode Island, the applicable insurance laws require the applicant to obtain insurance for automobile accidents that occur anywhere in North America. Thus, any person registering a vehicle here must show proof of financial security on the vehicle. Section 31–47–3.1(a) provides:

"No motor vehicle shall be registered and no registration renewed in this state unless the application for the registration of a motor vehicle shall contain a statement to be signed by the applicant [which] * * *:

(1) States that the applicant will not operate * * * the registered motor vehicle or any other motor vehicle unless all those motor vehicles shall be covered by financial security."

Under § 31–47–2(15), " '[p]roof of financial security' means proof of [an] ability to respond in damages for liability arising out of the ownership, maintenance, or use of a motor vehicle as evidenced by an *owner's policy of liability insurance.*" (Emphasis

added.) Section 31–47–2(13)(i)(A) defines an " '[o]wner's policy of liability insurance' " as:

"Every owner's policy of liability insurance shall provide insurance subject to the regulation against loss from the liability imposed by law for damages, including damages * * * because of bodily injury to or death of any person * * * arising out of the ownership, maintenance, use, or operation of a specific motor vehicle or motor vehicles *within the state of Rhode Island or elsewhere in the United States[,] in North America or the Dominion of Canada* * * *." (Emphasis added.)

As such, every vehicle registered in Rhode Island is required to have liability coverage for bodily injury claims resulting from accidents occurring not only in Rhode Island, but also elsewhere in North America. But the act does not attempt to regulate the terms of insurance policies issued to vehicle owners or operators such as Brites who do not apply to register their vehicles in Rhode Island.

Thus, the state does not, pursuant to the act, require an insurer such as Metropolitan to comply with the mandatory insurance provisions of § 31–47–2 when it issues an automobile liability policy to a Massachusetts resident who chooses not to register his vehicle in Rhode Island.

Construing a similar statute, this Court answered a certified question from the United States District Court for the District of Rhode Island in *Fratus v. Amerco,* 575 A.2d 989 (R.I.1990). That case concerned the application of Rhode Island law to a Rhode Island automobile accident involving a rented, out-of-state vehicle. *Id.* at 990. General Laws 1956 § 31–34–1 required owners of rental vehicles who wished to rent such vehicles in Rhode Island to provide proof of financial responsibility, as provided for in that section. *Fra-*

*tus,* 575 A.2d at 990–91. This Court held that a rented vehicle, registered in Michigan and leased in Massachusetts, was not subject to §§ 31–34–1 and 31–34–4. *See Fratus,* 575 A.2d at 992. The Court reasoned that Rhode Island had no power to give extraterritorial effect to the statutory requirement that a renter of an automobile provide proof of financial responsibility. *Id.* Because the statutory provisions on this subject clearly established that the duty to provide proof of financial responsibility was limited to owners of vehicles that registered, or who were required to register, their vehicles in Rhode Island, the out-of-state rental company had no obligation to file such proof of financial responsibility when it leased vehicles outside of this state that also were registered elsewhere. *Id.*

Likewise, here, § 31–47–2 does not attempt to set requirements for the scope of liability-insurance coverage that an insurer must provide when issuing a valid Massachusetts insurance policy to a Massachusetts resident who has registered his or her vehicle in Massachusetts. Therefore, Rhode Island law does not conflict with the Massachusetts law that requires insurers issuing policies in Massachusetts to offer optional out-of-state insurance coverage for bodily injuries arising from accidents occurring outside Massachusetts. Upon the insured's failure to accept that offer, however, that same law allows the insurer to issue automobile liability polices only with respect to accidents that occur within the Commonwealth.

Additionally, the limitation in Brites's policy restricting liability coverage to claims arising out of Massachusetts accidents does not conflict with current Rhode Island law or public policy in this area.[5] The General Assembly expressed concern over financial liability resulting from motor-vehicle accidents:

> "[M]otorists shall be financially able to respond in damages for their negligent acts, so that innocent victims of motor vehicle accidents may be recompensed for the injury and financial loss inflicted upon them." Section 31–47–1.

Rhode Island law thus requires all motorists that use Rhode Island highways, such as Brites did in this case, to carry adequate liability insurance on their vehicles. But the obligation to obtain liability insurance here is on the motorist who drives a vehicle in this state, and on the owner of the vehicle who permits the vehicle to be operated here; but Rhode Island law does not require the out-of-state insurer of the vehicle to provide such coverage.

In addition, § 31–47–8(d)(1) also subjects out-of-state owners and drivers, such as Brites, who operate their motor vehicles on the public highways of this state without carrying adequate liability insurance, to revocation of their privilege to drive here. This section provides:

> "The administrator of the division of motor vehicles, upon receipt of evidence that the owner of a motor vehicle not registered in this state has operated or permitted a motor vehicle to be operated upon the public highways of this state while financial security was not in effect with respect to the vehicle, may revoke the person's privilege to operate any motor vehicle in this state and the privilege of the operation within this state of any motor vehicle owned by him or her." *Id.*

---

5. Consequently, in resolving this case, we do not have to address Metropolitan's argument that any attempt by Rhode Island to regulate the content of Massachusetts insurance policies would be constitutionally impermissible. In this case, the Rhode Island General Assembly has not attempted to regulate the content or terms of such policies.

Notice that these provisions speak only to owners and operators of motor vehicles in this jurisdiction, but not to their out-of-state insurers. Although the General Assembly subjects out-of-state owners who operate their motor vehicles in this state without "financial security" to revocation of their driving privileges, it has not attempted to require the out-of-state insurers of such owners and operators to issue liability-insurance coverage for accidents occurring in Rhode Island, nor has it presumed to sanction their insurers for failing to do so.

Rather, the General Assembly has chosen to protect the citizens of Rhode Island from uninsured or underinsured motorists by requiring motorists who drive here to obtain liability coverage and by requiring insurers who issue automobile-liability policies in this state to offer uninsured/underinsured motorist coverage to all insureds who obtain motor-vehicle liability insurance in Rhode Island. *See* § 27–7–2.1. In doing so, the Legislature acknowledged that, inevitably, notwithstanding these laws, uninsured and underinsured motorists, such as Brites, will continue to operate their vehicles on Rhode Island highways. Thus, our Legislature has recognized that because "[m]andatory automobile liability insurance will not guarantee that all drivers will carry automobile liability insurance * * * Rhode Island drivers will need to carry additional insurance, to protect themselves from harm by uninsured motorists." Section 31–47–1.1(1), (2).

In other words, Rhode Island law addresses the factual situation presented in this case—that is, when an uninsured or underinsured driver, such as Brites, becomes involved in an automobile accident in Rhode Island with a Rhode Island motorist—by imposing insurance obligations on the motorists themselves, as opposed to their out-of-state insurers. To attain the legislative goal of assuring "that innocent victims of motor vehicle accidents may be recompensed for the injury and financial loss inflicted upon them," § 31–47–1, the General Assembly required Brites and other drivers similarly situated, at the risk of revoking his driving privileges here, to obtain liability insurance that would cover him while he was driving in Rhode Island. It also required insurers issuing liability policies in this jurisdiction to offer uninsured/underinsured motorist coverage to their insured customers. Drivers declining such coverage are also obliged to sign a written advisory notice, acknowledging that they have been informed of the "hazard of uninsured and underinsured motorists," but have nevertheless elected not to purchase this additional coverage. *See* § 27–7–2.1. But the law does not require insurers issuing automobile-liability policies for motor vehicles registered in other jurisdictions to also provide liability coverage for motor-vehicle accidents occurring in Rhode Island.

For these reasons, and contrary to the assertions of Mendez and Brites, Rhode Island law and public policy do not conflict with Massachusetts law about whether insurers that issue automobile-liability policies in states other than Rhode Island must provide the insured drivers and motor-vehicle owners residing in these other states with liability insurance for accidents occurring in Rhode Island. Rhode Island law simply does not attempt to regulate the content of insurance policies that drivers or owners of motor vehicles purchase in other states when those drivers do not choose to register their vehicles in Rhode Island.

■ We analyze the contested terms of an insurance policy according to the same rules established for the interpretation of other contracts. *Zarrella v.*

*Minnesota Mutual Life Insurance Co.,* 824 A.2d 1249, 1259 (R.I.2003). In doing so, we have no need to construe contractual provisions unless those terms are ambiguous. *A.F. Lusi Construction, Inc. v. Peerless Insurance Co.,* 847 A.2d 254, 258 (R.I.2004). When the terms are clear, we will apply them as written, giving the language its "plain, ordinary and usual meaning." *Id.* (quoting *W.P. Associates v. Forcier, Inc.,* 637 A.2d 353, 356 (R.I.1994)). When contractual language is unambiguous, however, the parties' intentions must govern our interpretation if we can infer those intentions from the parties' writings and carry them out in a manner consistent with settled rules of law. *Id.* On the other hand, this Court may deem contractual provisions that violate public policy to be unenforceable. See *Ryan v. Knoller,* 695

A.2d 990, 992 (R.I.1997); *Cianciarulo v. Caldarone,* 69 R.I. 86, 89, 30 A.2d 843, 845 (1943). We are bound, however, "to respect the express terms and conditions of an insurance contract that are not in violation of public policy." *Amica Mutual Insurance Co. v. Streicker,* 583 A.2d 550, 554 (R.I.1990).

■ Here, the language of Brites's automobile insurance policy is clear: no liability coverage exists for bodily injury claims arising out of accidents that take place "off the ways of the commonwealth." Mass. Gen. Laws Ann. ch. 175, § 113C. Neither party disputes that Brites did not elect to purchase such optional coverage when he obtained his Metropolitan insurance policy.[6] As noted previously, this limitation in the policy does not violate Rhode Island law, nor is it against the public policy of

---

**6.** When he applied for this Metropolitan policy, Brites listed a Rhode Island driver's license on his application, but he also gave a Massachusetts address for his residence. He alleged that he was unable to read English "very well," that he was unaware that his policy would not cover accidents in Rhode Island, and that the Massachusetts car dealership, through which he originally purchased the Metropolitan policy, did not inform him that his policy only provided coverage for bodily injuries resulting from accidents occurring in Massachusetts. Brites maintained that, at the time he purchased the car, the person at the car dealership who assisted him in obtaining the insurance policy knew that he worked in Rhode Island and that he "believed Metropolitan was informed that [he] worked in Rhode Island." These allegations, however, fail to raise a genuine issue of material fact because Brites alleged no misrepresentation by Metropolitan or by the person who allegedly obtained the insurance for him about the scope of the insurance coverage. Also, he failed to provide information on the relationship, if any, between Metropolitan and the person at the Massachusetts car dealership who allegedly assisted him with the insurance application. Thus, he presented no competent evidence that Metropolitan was aware that he would be driving his insured vehicle in Rhode Island.

Moreover, the mere fact that Brites listed a Rhode Island driver's license on his insurance application does not support his claim for reforming the policy. Massachusetts law requires those who apply to register a vehicle in Massachusetts and insurers issuing or delivering motor-vehicle insurance policies in Massachusetts to comply with the statutory minimum coverage provisions applicable in that state. *See* Mass. Gen. Laws Ann. ch. 90, § 1A (West 2001); Mass. Gen. Laws Ann. ch. 175, §§ 113A, 113C (West 1998). Likewise, Rhode Island requires those seeking to register their vehicles in Rhode Island and those drivers using the public highways of Rhode Island to obtain insurance policies that comply with the mandatory coverage minimums set by Rhode Island law. *See* G.L.1956 §§ 31–47–3.1(a), 31–47–8(d)(1). Neither Rhode Island nor Massachusetts law, however, requires an insurer that accepts an application for an automobile-liability policy in Massachusetts from a resident of that state—even one who is licensed to drive in Rhode Island—to provide coverage for accidents occurring in Rhode Island. Therefore, the fact that Brites listed a Rhode Island driver's license on his insurance application did not require Metropolitan to include Rhode Island in the policy's coverage.

this state. The General Assembly has decided to protect the citizens of Rhode Island from uninsured or underinsured motorists by requiring that these motorists provide evidence of financial security as a condition of driving here and by requiring insurers issuing Rhode Island policies to offer insurance for accidents involving uninsured motorists to all those choosing to register their vehicles in Rhode Island. *See* § 27–7–2.1. Thus, whether we apply Massachusetts or Rhode Island law, the liability provision in the Metropolitan policy—extending coverage only for Massachusetts accidents—is enforceable and valid.

Finally, this case is distinguishable from *Amick v. Liberty Mutual Insurance Co.*, 455 A.2d 793 (R.I.1983) and other similar cases. In *Amick*, this Court held that Rhode Island minimum-coverage law applied to increase the optional out-of-state insurance limit of $10,000 in a Massachusetts insurance policy to meet the minimum $25,000 required under Rhode Island law. *Id.* at 794–96. In *Amick*, unlike this case, the Massachusetts resident who was involved in an automobile accident in Rhode Island had purchased the optional out-of-state accident coverage offered by the insurer. *Id.* at 794. This Court applied Rhode Island law to that policy's coverage and reformed the minimum coverage limits to conform to applicable Rhode Island law. *Id.* at 796. In doing so, the Court reasoned that raising the limit on the policy to meet Rhode Island's minimum coverage requirement implemented the state's public policy that those who undertake to insure a vehicle against accidents occurring in this state must do so for at least the statutory minimum amount of coverage. *See id.* And the Court also ruled that such a reformation of the contract was consistent with the parties' intent when they entered into the contract. *See id.* Because the insured

had selected this optional out-of-state coverage, Rhode Island law would have to deem him an underinsured motorist—unless the Court reformed the policy to raise the limit on the policy's coverage to conform to Rhode Island laws. *Id.* at 795. In these circumstances, the Court said, "[w]e do not believe that the insured bargained for the status of an uninsured motorist when he purchased the optional coverage from Liberty Mutual." *Id.* at 796. Thus, the Court reformed the policy and raised the policy limit from the Massachusetts minimum to the minimum that Rhode Island law required. *Id.*

Unlike the insurer in *Amick*, however, the insurer here did not "undertake to insure" Brites for the risk of out-of-state accidents, *id.* at 795, nor did Brites contract with Metropolitan to insure against this risk. Therefore, reforming the insurance contract to include coverage that Brites expressly declined to include in his policy and that contravened the policy's express coverage provisions would be contrary to the parties' objective manifestations of their intent in this case.

██ Brites and Mendez also cite *Allstate Insurance Co. v. Sullam*, 76 Misc.2d 87, 349 N.Y.S.2d 550 (Sup.Ct. Trial Term 1973), for the proposition that when Massachusetts automobile-insurance law conflicts with the public policy of a state in which a car accident has occurred, the court of the forum state need not follow Massachusetts law. In *Sullam*, an insured procured an insurance policy in Massachusetts by fraud. *Id.* at 554. As in *Amick*, the insured elected to purchase the optional coverage for accidents occurring outside the Commonwealth. *Id.* After an accident occurred in New York, the insurer wished to rescind the policy—a remedy for fraud that it could invoke under Massachusetts law. *Id.* at 555–56, 559. A New York trial

judge, however, noted that "[i]n this [s]tate, rescission of auto liability insurance policies after an accident stands in high disfavor, and is generally prohibited." *Id.* at 552. Therefore, the trial judge applied New York law to prevent the attempted rescission of the policy. *Id.* at 556. Here, unlike the policy at issue in *Sullam*, there is no coverage in the policy for accidents occurring in the forum state (Rhode Island), nor is there any clear Rhode Island public policy or statutory provision prohibiting another state from offering out-of-state accident insurance on an optional, rather than on a compulsory basis. We agree with the holding of *Sullam* that when a court undertakes a conflict-of-law analysis, and the law of a foreign jurisdiction conflicts with a strong public policy of the forum state, the public policy of the forum state may prevail. But in this case, there is no such conflict of laws to assess.

## Conclusion

For these reasons, we deny the appeal and affirm the Superior Court final judgment in favor of Metropolitan.