Amos ROBINSON, Jr.

v.

John H. MAYO et al.

No. 2003–534–Appeal.

Supreme Court of Rhode Island.

June 10, 2004.

**352**

Michael A. DelSignore, for Plaintiff.

Christopher M. Orton, Warwick, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, and SUTTELL, JJ.

## OPINION

PER CURIAM.

An insurer issued an automobile-liability insurance policy in Massachusetts to a Massachusetts resident for a Massachusetts-registered car. The policy excluded coverage for accidents occurring outside Massachusetts. After the insured's vehicle was involved in a Rhode Island accident, a Superior Court motion justice declared that the above-described geographic limitation on coverage violated Rhode Island public policy and, thus, was unenforceable. Because Rhode Island law does not conflict with this provision, *see Mendez v. Brites*, No.2001–230–A, 849 A.2d 329, 2004 WL 1219330 (R.I., filed June 4, 2004), we reverse and vacate the judgment.

### Facts and Travel

The defendant insurer, Trust Insurance Company (Trust), appeals from a Superior Court declaratory judgment. A Superior Court motion justice declared that a geographic limitation contained within a Massachusetts automobile-insurance policy that Trust issued to a Massachusetts resident, defendant John Mayo (Mayo), violated Rhode Island public policy. Therefore, the court declared that the policy's exclusion of coverage for accidents occurring outside Massachusetts was void and unenforceable. On appeal, we ordered the parties to show cause why the issues raised in this appeal should not be decided summarily. After considering the arguments of counsel and examining the parties' legal memoranda, we are of the opinion that cause has not been shown and that the case should be decided at this time.

On December 17, 1997, plaintiff, Amos Robinson, Jr. (Robinson), and Trust's insured co-defendant, Mayo, were involved in a two-car motor vehicle accident at the intersection of Prairie Avenue and Pearl Street in Providence. The plaintiff, a Rhode Island resident, alleged that he suffered personal injuries as a result of Mayo's negligence. At the time of the accident, Mayo resided in Massachusetts, where he also garaged, registered, and insured his car with Trust. The insurance policy, which mirrored the minimum compulsory coverage that Massachusetts law required, contained a clause limiting the scope of its liability coverage to accidents occurring in Massachusetts. This clause provided that liability coverage would be available only for damages that Mayo caused while operating his insured vehicle within Massachusetts.[1] Mayo did not purchase, and therefore his policy did not include, the additional optional coverage that Trust offered, which would have extended the liability coverage to Rhode Island and other geographic areas beyond Massachusetts.

After the accident, plaintiff filed a third-party claim with Trust, in its capacity as Mayo's insurer. Trust, however, denied payment on the claim, asserting that it did not cover Mayo for plaintiff's alleged bodily injuries because the accident occurred outside Massachusetts. Thus, Trust

---

1. Specifically, the policy provides: "[W]e will pay damages to people injured or killed by *your auto* in Massachusetts accidents * * *. We will not pay: * * * 2. For accidents outside of Massachusetts or in places in Massachusetts where the public has no right of access."

deemed Mayo to be uninsured for the accident. The plaintiff, however, did not carry any uninsured motorist coverage. On June 4, 1999, plaintiff filed a declaratory-judgment action in which he joined Mayo and Trust as defendants.[2] While alleging negligence, and seeking a damages judgment against Mayo, plaintiff also sought a judgment against Trust declaring that notwithstanding the policy's geographic limitation to Massachusetts accidents, its policy covered Mayo for accidents occurring in Rhode Island; that the policy be reformed to afford bodily injury coverage to Mayo, for accidents occurring in Rhode Island; and that Trust provide liability coverage for his claim against its insured, Mayo. In other words, plaintiff sought to have the court reform Trust's Massachusetts policy with Mayo so that it would cover his claim against Mayo.

On March 18, 2003, Trust moved for summary judgment, requesting a finding

2. As we recently explained in *Mendez v. Brites*, No.2001–230–A., at 331–32 n. 2, 2004 WL 1219330 (R.I., 2004), G.L.1956 § 27–7–2 prohibits injured parties such as Robinson from joining an alleged tortfeasor's insurer as a defendant in a direct action for damages against the insured alleged tortfeasor, absent a *non est inventus* return of process or the satisfaction of one of the other conditions precedent specified in the statute. In this case, Robinson failed to allege that he satisfied any of those conditions. Nevertheless, plaintiff joined Trust as a defendant in his negligence action against Mayo seeking damages for his personal injuries. Generally speaking, it would seem clear that plaintiff lacked standing to bring such a direct action against Trust under these circumstances. *See Canavan v. Lovett, Schefrin and Harnett*, 745 A.2d 173, 174–75 (R.I.2000) (per curiam) (holding injured plaintiff lacked standing to bring a direct action against the alleged tortfeasor's insurer because he had not first obtained a judgment against the alleged tortfeasor). Indeed, in its answer to Robinson's complaint in this case, Trust raised as its "Sixth Affirmative Defense" that plaintiff lacked standing to maintain this action. The plaintiff then filed a motion to strike Trust's "Sixth Affirmative Defense," but plaintiff misidentified the defense in his motion as being the one that "[t]he plaintiff is estopped by his own actions and conduct from asserting the claims alleged in the complaint." That defense was actually the "Fifth Affirmative Defense" in Trust's Answer. In any event, a justice of the Superior Court granted plaintiff's motion, and the court entered an order striking Trust's "Sixth Affirmative Defense" on September 28, 1999. Notwithstanding this procedural confusion, the failure of plaintiff to satisfy one of conditions precedent specified in § 27–7–2—(for example, as in this case, a judgment against the tortfeasors)—is an issue that the parties or the court can raise at any time. *Goodman v. Turner*, 512 A.2d 861, 863 (R.I.1986). Although we acknowledge our authority to reach the issue of standing here *sua sponte*, we decline to do so. Instead, we will assume *arguendo* the existence of standing because no party in this case has briefed this issue to us or invoked § 27–7–2 as a bar to plaintiff's joinder of Trust as a party to this action. Second, the question of whether an injured party has standing to sue the insurer in a declaratory-judgment action seeking a ruling on the scope of the policy's coverage, as in this case, is still unsettled. *See Mendez*, at 331–32 n. 2 (discussing conflict of authority with respect to injured party's right to bring a declaratory-judgment action against an insurer). Therefore, as in *Mendez*, we shall assume *arguendo*, without deciding, that the plaintiff in this case had standing to bring a declaratory-judgment action against an insurer pursuant to G.L. 1956 § 9–30–2 of the Uniform Declaratory Judgments Act. That statute provides, in pertinent part, that "[a]ny person * * * whose rights, status, or other legal relations are affected by a * * * contract * * * may have determined any question of construction or validity arising under the * * * contract * * * and obtain a declaration of rights, status, or other legal relations thereunder." *Id.* Thus, here, as we did in *Mendez*, we will assume *arguendo* that plaintiff's "rights, status, or other legal relations" were "affected by" Mayo's insurance policy with Trust, that he had an interest in Mayo's ability to obtain coverage from Trust, that the scope of that coverage would affect that interest, and that § 27–7–2 does not preclude him from maintaining a declaratory-judgment action against the alleged tortfeasor's insurer to determine a question of coverage.

that the coverage limitation contained in the policy was valid and enforceable.[3] Trust asserted that this geographic limitation did not violate Rhode Island law or public policy. Mayo filed a memorandum in opposition to Trust's motion, asserting that he possessed standing to oppose the motion, vis-à-vis both plaintiff and Trust.[4]

On July 10, 2003, Mayo filed a "motion for declaratory judgment," seeking a declaration from the court that would require Trust to provide him with coverage for the Rhode Island accident with plaintiff. He also asked the court to declare that the geographic limitation in the policy was unreasonable and void, and that he be awarded damages, including punitive damages, and costs. Concomitantly, Mayo filed an affidavit in which he asserted that he was not informed that the coverage contained in the policy was restricted to accidents occurring in Massachusetts. He suggested that, had he been so informed, he would have purchased the optional additional coverage. Apparently, because his motion lacked an omnibus form, the court gave it no effect after he filed it. On July 18, 2003, Trust objected to Mayo's "motion" for declaratory judgment, noting that

Mayo had not sought leave to file a proper pleading asserting such a cross-claim, or any other claim, against it.

In apparent response to that suggestion, on July 29, 2003, Mayo moved for permission to file a cross-claim against Trust, and on that same day, he actually filed a cross-claim against Trust. He alleged that Trust: (1) breached its contract with him and (2) knowingly misrepresented the policy's coverage and in bad faith refused to pay a claim it was required to pay under the policy, in violation of G.L.1956 § 27–9.1–4. That pleading further sought a declaratory judgment against Trust to obtain coverage for plaintiff's claim. Trust objected to Mayo's motion for leave to file this cross-claim. Although there is no order in the Superior Court record, the docket sheet indicates that on August 7, 2003, the court denied Mayo's motion to file such a cross-claim. Mayo has neither appealed from that order nor sought discretionary review of that ruling from this Court.

On July 29, 2003, a justice of the Superior Court heard Trust's motion for sum-

3. On August 2, 2000, the Massachusetts Supreme Judicial Court declared Trust insolvent. Thereafter, Trust successfully moved to stay these proceedings until February 2, 2001. In accordance with Mass. Gen. Laws Ann. ch. 175D, §§ 1–16 (West 1998) all claims pending against Trust were transferred to the Massachusetts Insurers Insolvency Fund (Fund). On July 23, 2003, pursuant to Rule 25 of the Superior Court Rules of Civil Procedure, the Fund filed a motion for an order substituting it for the interest of Trust in this matter. Because the motion lacked a certification date, however, the court apparently gave it no effect. In any event, the record contains no order granting this motion. Absent a court order directing the Fund "to be substituted in the action or joined with" Trust, this case continues with Trust as a defendant. *See* Rule 25(c).

4. Mayo alleged that Trust misrepresented the policy's coverage by failing to inform him that it did not intend to cover accidents occurring outside Massachusetts, and that this misrepresentation violated G.L.1956 § 27–9.1–4. He also invoked his alleged rights under G.L. 1956 § 9–1–33 to bring a bad-faith action against Trust, averring that Trust "wrongfully and in bad faith refused to pay or settle a claim made pursuant to the provisions of the policy." He requested the court to enforce Trust's asserted obligation to settle plaintiff's claim against him. Mayo also averred that he had no knowledge of the geographical limitation in his policy until plaintiff sued him. For what he considered to be Trust's bad-faith refusal to meet the policy's coverage obligations, Mayo sought leave to file a claim against Trust for compensatory and punitive damages, as well as attorneys' fees under § 9–1–33.

mary judgment. The motion justice denied summary judgment, ruling that the extraterritorial exclusion was contrary to Rhode Island public policy and, therefore, the clause was void. The motion justice did not rule on the issue of whether Trust was obliged to inform Mayo of the existence of this territorial limitation of coverage, nor did the court address whether Mayo waived coverage beyond Massachusetts' borders when he executed the policy in question. Thereafter, the court entered judgment under Rule 54(b) of the Superior Court Rules of Civil Procedure in favor of plaintiff, and Trust filed a timely notice of appeal.[5]

On appeal, Trust argues that the motion justice erred in deciding that the geographic exclusion in the Mayo policy was void and unenforceable because the exclusion does not violate any Rhode Island laws or public policy. Trust contends that Massachusetts law allows insurance carriers to incorporate within their minimum compulsory-insurance policies a provision limiting liability coverage for motor vehicle accidents to accidents occurring within the Commonwealth of Massachusetts. Because Trust issued the policy in Massachusetts to a Massachusetts resident, and because it covered an automobile that the

insured registered and garaged in Massachusetts, Trust submits that this Court should construe the terms of the policy as valid under Massachusetts law—especially because such a provision does not conflict with any law or public policy in Rhode Island.

The plaintiff responds that the extraterritorial exclusion contained in the policy should not be recognized and enforced in this jurisdiction. He argues that this Court should apply Rhode Island law when deciding whether the territorial exclusion is consistent with this state's public policy because the accident occurred in Providence and the legality of the exclusion affects all motorists who use Rhode Island roadways. Given the likelihood that, sooner or later, a Massachusetts motorist will operate his or her vehicle in Rhode Island, plaintiff maintains, this Court should refuse to uphold the exclusion as an unconscionable contract provision. The plaintiff contends that despite the Full Faith and Credit Clause, this Court is not required to enforce the territorial limitation permitted under Massachusetts law if it violates Rhode Island public policy.

Mayo also filed a memorandum of law with this Court, requesting that we allow him to be heard on this appeal.[6] But

5. After the motion justice denied its summary judgment motion, Trust sought entry of a final judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure, as well as a stay of further proceedings in the case pending the outcome of its appeal, both of which motions the court granted on September 3, 2003. Although the Rule 54(b) judgment in favor of plaintiff was not entered until October 2, 2003, Trust filed its notice of appeal on September 10, 2003. This Court, however, has treated the premature filing of a notice of appeal as timely. *See United Lending Corp. v. City of Providence*, 827 A.2d 626, 631 n. 9 (R.I.2003) (citing *Russell v. Kalian*, 414 A.2d 462, 464 (R.I.1980)).

6. Mayo's request to be heard on this appeal is procedurally improper because he did not petition for a writ of certiorari or file any notice of appeal from the denial of his motion to assert a cross-claim against Trust. Moreover, the judgment on appeal is solely between plaintiff and Trust. Thus, Mayo has no pending cross-claim against Trust in this case. Although the record does not disclose why the court denied Mayo's cross-claim against Trust—one that he based on an alleged breach of contract, misrepresentation, and bad faith—this Court has held that "[b]efore a bad-faith claim can even be considered, a plaintiff must prove that the insurer breached its obligation under the insurance contract." *Lamoureaux v. Merrimack Mutual Fire Insurance Co.*, 751 A.2d 1290, 1293 (R.I., 2000)

Mayo is not a proper party to the present appeal. The court denied his motion for leave to file a cross-claim against Trust, and Mayo failed to appeal or to file a petition for a writ of certiorari to seek review of that order. His attempt to maintain a declaratory-judgment action against Trust also foundered. Although Mayo included his declaratory-judgment action against Trust in the same pleading as his cross-claim, no order or any other record exists with respect to the declaratory aspect of that pleading. Moreover, Mayo has not appealed from any Superior Court order or judgment affecting his interests in this matter. Nonetheless, as a practical matter, we recognize that our determination in the present appeal is effectively a determination of the same issue that Mayo attempted to have the court address through his declaratory-judgment action against Trust.

### Analysis

Recently, in *Mendez,* we confronted the same legal question raised in this appeal. In that case, Mendez, a Rhode Island resident, and Brites, a Massachusetts resident, were involved in an automobile accident in Rhode Island. *Mendez,* at 330–31. Brites obtained his automobile liability insurance policy in Massachusetts, where he also garaged his insured car. *Id.* The policy provided him with liability coverage only for accidents that occurred in Massachusetts; he did not pay for, and therefore his policy did not include, optional additional coverage, which would have insured him for bodily injuries to others resulting from accidents occurring beyond Massachusetts'

geographic borders. *Id.* at 330–32. Mendez then filed a declaratory-judgment action against Brites, joining Brites' insurer as a defendant. *Id.* at 331–32. He sought to reform the exclusionary language in the · policy to require the insurer to provide Brites with liability coverage for accidents outside Massachusetts and, specifically, for the Rhode Island accident at issue in that case. *Id.* at 332. Brites cross-claimed against his insurer, also seeking a declaratory judgment that would reform the policy. *Id.* at 332–33. The insurer moved for summary judgment, arguing that it had offered Brites the option to purchase coverage for accidents that occur outside of Massachusetts, as required by Massachusetts law, but that Brites declined this coverage. *Id.* at 333. The court then granted summary judgment in favor of the insurer. *Id.*

On appeal, Mendez and Brites argued that the motion justice should not have enforced this coverage limitation in the policy because it conflicted with Rhode Island law and public policy. *Mendez,* at 333. We held, however, that the Massachusetts-coverage provision did not conflict with Rhode Island law and, therefore, we affirmed summary judgment in favor of the insurer. *Id.* at 337–38. In reaching this conclusion, we determined, with respect to Massachusetts law, that although insurers issuing policies in that state *must offer* optional additional insurance coverage for bodily injury liability arising from accidents occurring outside Massachusetts, they are *not required to issue* such coverage unless the insured elects to purchase it.[7] *Id.* Referring to G.L.1956 § 31–47–

---

(quoting *Lewis v. Nationwide Mutual Insurance Co.,* 742 A.2d 1207, 1209 (R.I.2000)). Thus, the cross-claim Mayo attempted to assert was, and remains, premature until the question of coverage for plaintiff's claim is decided. The only question that the motion justice decided, and the only question properly before us, is whether the policy's exclusion of extraterritorial liability coverage for accidents occurring outside Massachusetts was properly deemed void and unenforceable.

7.  The Massachusetts statutes relevant to our analysis in *Mendez* were Mass. Gen. Laws Ann. ch. 90, § 34A (West 2001) and Mass.

3.1(a), § 31–47–2(15), and § 31–47–2(13)(i)(A),[8] we then determined that even though Rhode Island law requires every vehicle registered in the state "to have liability coverage for bodily injury claims resulting from accidents occurring not only in Rhode Island, but also elsewhere in North America," it "does not attempt to regulate the terms of insurance policies issued to vehicle owners or operators * * * who do not apply to register their vehicles in Rhode Island." *Mendez,* at 335. Specifically, we held that § 31–47–2:

"does not attempt to set requirements for the scope of liability-insurance coverage that an insurer must provide when issuing a valid Massachusetts insurance policy to a Massachusetts resident who has registered his or her vehicle in Massachusetts. Therefore, Rhode Island law does not conflict with the Massachusetts law that requires insurers issuing policies in Massachusetts to offer option-

al out-of-state insurance coverage for bodily injuries arising from accidents occurring outside Massachusetts." *Mendez,* at 335–36.

The present case is factually similar to *Mendez* and requires us to analyze exactly the same contractual language under the same laws using that same standard:

"We analyze the contested terms of an insurance policy according to the same rules established for the interpretation of other contracts. * * * In doing so, we have no need to construe contractual provisions unless those terms are ambiguous. * * * When the terms are clear, we will apply them as written, giving the language its 'plain, ordinary and usual meaning.' * * * When contractual language is unambiguous, however, the parties' intentions must govern our interpretation if we can infer those intentions

---

Gen. Laws Ann. ch. 175, § 113C (West 1998). Chapter 90, § 34A defines a "[m]otor vehicle liability policy" as

"a policy of liability insurance which provides indemnity for or protection to the insured * * * against loss by reason of the liability to pay damages to others for bodily injuries * * * arising out of the ownership, operation, maintenance, control or use *upon the ways of the commonwealth* of such motor vehicle." (Emphasis added.)

Chapter 175, § 113C provides:

"[N]o company shall issue such motor vehicle liability policies or act as surety upon such motor vehicle liability bonds unless it makes a *mandatory offer* to issue to any person purchasing such policy or bond, *at his option,* additional coverage, beyond that required by section thirty-four A of chapter ninety, * * * of the combination of *bodily injury liability off the ways of the commonwealth* and liability for guest occupants on and off the ways of the commonwealth * * *." (Emphases added.)

8. General Laws § 31–47–3.1(a) provides in pertinent part:

"No motor vehicle shall be registered and no registration renewed in this state unless the application for the registration of a mo-

tor vehicle shall contain a statement to be signed by the applicant [which] * * *:

"(1) States that the applicant will not operate * * * the registered motor vehicle or any other motor vehicle unless all those motor vehicles shall be covered by financial security."

Section 31–47–2(15) provides that " '[p]roof of financial security' means proof of [an] ability to respond in damages for liability arising out of the ownership, maintenance, or use of a motor vehicle as evidenced by an owner's policy of liability insurance." Section 31–47–2(13)(i)(A) defines an "[o]wner's policy of liability insurance," providing:

"Every owner's policy of liability insurance shall provide insurance subject to the regulation against loss from the liability imposed by law for damages, including damages * * * because of bodily injury to or death of any person * * * arising out of the ownership, maintenance, use, or operation of a specific motor vehicle or motor vehicles within the state of Rhode Island or elsewhere in the United States[,] in North America or the Dominion of Canada * * *."

from the parties' writings and carry them out in a manner consistent with settled rules of law. * * * On the other hand, this Court may deem contractual provisions that violate public policy to be unenforceable. * * * We are bound, however, 'to respect the express terms and conditions of an insurance contract that are not in violation of public policy.'" *Mendez,* at 337–38.

In this case, Trust issued an automobile liability insurance policy in Massachusetts to Mayo, a Massachusetts resident, for a motor vehicle that Mayo registered and garaged in Massachusetts. The "Compulsory Insurance" section of that policy provided that "[u]nder this Part, we will pay damages to people injured or killed by *your auto* in Massachusetts accidents." The "Optional Insurance" section of that policy provided:

> "This Part is similar to Compulsory Bodily Injury to Others (Part 1). Like the Compulsory Part, this Part pays for accidents involving *your auto* in Massachusetts. Also like the Compulsory Part, this Part does not pay for the benefit of anyone using an auto without the consent of the owner.
>
> *Unlike the Compulsory Part, this Part does provide coverage for injuries to guest occupants and for accidents occurring outside Massachusetts.*" (Emphasis added.)

The language of Mayo's policy is clear and unambiguous. It is undisputed that he did not purchase the optional coverage that was available to him; the "Coverage Selections Page" of his policy bears out his failure to elect this option. The "Optional Insurance" section of the policy shows unmistakably that there is no liability coverage for bodily injury claims for accidents occurring outside Massachusetts without the election and purchase of this additional coverage. The alleged injuries at issue here are the result of an accident that occurred in Rhode Island. As stated above, the provision in the policy limiting coverage to accidents that occur within Massachusetts violates neither the law nor public policy of Rhode Island. Because the extraterritorial limitation provision contained in Mayo's insurance policy does not violate Rhode Island public policy, we are bound to respect that contractual language. Furthermore, there is no conflict-of-laws issue to analyze because Rhode Island and Massachusetts law do not conflict on this question.[9]

When reviewing a summary judgment motion, "[w]e examine the pleadings and the affidavits in the light most favorable to the nonmoving party, and if no issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law." *Pollard v. Hartford Insurance Co.,* 583 A.2d 79, 81 (R.I.1990) (citing *Nichola v. John Hancock Mutual Life Insurance Co.,* 471 A.2d 945, 947–48 (R.I.1984)). We also review *de novo* a trial justice's findings on questions of law. *George v. Fadiani,* 772 A.2d 1065, 1067 (R.I.2001) (per curiam). The case before us does not raise issues of material fact that would prevent the entry of summary judgment. The only issue before us is whether the geographical limitation clause, as a matter of law, is valid. Having

---

**9.** The plaintiff relies on a New York trial judge's decision in *Allstate Insurance Co. v. Sullam,* 76 Misc.2d 87, 349 N.Y.S.2d 550, 557 (Sup.Ct., Trial Term 1973), which held that when a Massachusetts automobile-insurance law conflicts with the public policy of a state in which an accident has occurred, the court of the forum state need not follow Massachusetts law. Although we agree generally with this holding, we note that, in *Mendez,* as in this case, we are not faced with a conflict-of-laws issue, as was the situation in the *Sullam* case. *Mendez,* at 339–40. Thus, *Sullam* is inapposite.

determined that there is no conflict-of-laws issue that invalidates this geographic limitation on coverage, we hold that the court should have granted summary judgment in favor of Trust.

See also 823 A.2d 1144.

## Conclusion

Accordingly, we reverse the motion justice's denial of summary judgment and vacate the judgment that the court entered in favor of the plaintiff on the coverage question. We remand the record to the Superior Court for entry of a judgment in favor of Trust.

Justice FLAHERTY did not participate.